THOMAS BLANCHARD *vs.* WILLIAM R. COOKE & others.

Worcester.    April 6, 1888. — June 19, 1888.

Present: MORTON, C. J., DEVENS, W. ALLEN, C. ALLEN, & HOLMES, JJ.

*Equity Practice — Bill — Issues for Jury — Waiver — Amendment — Contract — Breach — Evidence.*

A defendant in a suit in equity filed an answer in the Superior Court in February, 1886, and, after a hearing, a final decree was entered in June, 1886, which, on appeal, was reversed in March, 1887. The case was again heard in May, 1887, when he, after the juries were dismissed for the term, for the first time filed a motion for issues to a jury, having had ample time to do so before their dismissal. *Held,* that he had waived his right, if he had any, to a trial by jury, and that his application was too late.

The owner of a stock of goods in a store in A. made a conditional sale thereof, upon an agreement that the legal title should remain in him, but should vest in the buyer in proportion to the amounts paid by him from time to time on account of the purchase money, the buyer also agreeing to apply on account thereof the proceeds of the sale of a stock of goods in B., as soon as received. *Held,* that a failure by the buyer to pay over the proceeds of the B. goods would authorize the seller to enter and take possession of the A. goods remaining.

After such entry, the seller filed a bill in equity, alleging that the buyer had failed and neglected to pay over the balance of the proceeds of sales, though often requested to do so, and that, in violation of his agreement, the buyer had taken such proceeds and appropriated them to his own use. At the hearing the seller contended that the entire proceeds of the B. goods were to be paid over to him, and evidence was admitted of the buyer's misappropriation thereof, no objection being made that the averments of the bill were not broad enough to cover it. *Held,* that it was too late, at an argument before the full court, on appeal, to object that such evidence was improperly admitted.

BILL IN EQUITY, filed in the Superior Court on December 4, 1884, brought originally against William R. Cooke alone, and alleging that on July 12, 1883, the plaintiff was the owner and in possession of a stock of goods in Southbridge; and that on that day Cooke executed a contract, under seal, containing the following provisions.

." That said Blanchard hereby agrees to sell, and said Cooke agrees to buy, all the stock of goods, fixtures, and merchandise, and property owned by said Blanchard now contained in the store of the Edwards estate, at said Southbridge, as itemized, invoiced, and entered upon a certain stock-book marked ' T. Blanchard's stock-book,' for the sum of fourteen thousand two

hundred ·and fourteen and $\frac{94}{100}$ dollars, said agreement to sell and purchase being made on the following terms and conditions, to wit:

" Said Blanchard promises and agrees to give, and hereby does give, to said Cooke possession of said goods, merchandise, fixtures, and property, with full power and authority to manage, deal with, and sell the same, in the regular course of business as a retail dealer in dry goods, and to take and receive the proceeds from such sales, and to apply the same as shall hereinafter be provided, upon the following express conditions, namely:

" That for the security of said Blanchard the legal title in said goods shall be and remain in said Blanchard until said sum of $14,214.94, with interest at the rate of seven per cent per annum, shall have been fully paid, it being agreed, however, that said title may vest in said Cooke in the proportion to the amount which at any time he shall have paid on account of said $14,214.94, and interest, said Cooke hereby covenanting and agreeing that said Blanchard shall be the legal owner of a fractional part of the stock of goods in said store, whether it be these goods or goods subsequently purchased by said Cooke, which fractional part shall at all times bear the same proportion to the balance of $14,214.94, and interest, then unpaid, and due from said Cooke, that the whole amount of goods now bears to said sum of $14,214.94.

" That said Cooke shall pay, out of the proceeds of all sales made by him, the rent of said store, taxes, reasonable clerk hire, and insurance, and shall have the right to use the proceeds of sales of these goods to purchase new goods in the regular course of business, and also have the right to take from said proceeds the sum of one hundred and twenty-five dollars each month or fractional part thereof for his own use and living expenses.

" Said Cooke shall take an account of stock some time during the months of February and August each year, and, after the payment of the expenses before named for said six months prior to taking said account of stock as aforesaid, pay to said Blanchard the balance of said entire proceeds of sales for each six months, until the whole sum of $14,214.94, with interest at the rate aforesaid, shall have been fully paid, it being agreed said Cooke shall have the right to pay to said Blanchard, at any time,

any other and further sums on account of said $14,214.94 for all of which payments said Blanchard is to give a receipt and indorse the same on a duplicate copy of this contract; provided, however, and it is mutually agreed, said $14,214.94, with interest at the rate aforesaid, shall be fully and entirely paid within four years from the date herein before first written.

" That said Cooke shall keep regular books of account of all purchases and sales, and all expenses and receipts, which at all reasonable times shall be open to the inspection of said Blanchard, his attorney or representatives; and that said Cooke shall make or cause to be made a trial balance of each month's business, and give the same to said Blanchard at the end of each month.

" That said Cooke shall keep said stock of goods and fixtures, and all other goods and fixtures that he may hereafter purchase, insured in some good insurance company or companies for the full value thereof, which insurance shall be payable to said Blanchard, and in case of loss by fire it is agreed said Blanchard is authorized and empowered, and shall have the right, to sue and collect the whole amount of insurance from said companies at the expense of said Cooke, and, after collecting the same therefrom, first pay to himself the amount at that time due to himself from said Cooke, and then pay the balance to said Cooke; it being agreed, however, if said Blanchard shall be unable to collect the full value of the goods burned or injured from said companies, that said Blanchard shall bear that proportion of that loss which the amount due to him from said Cooke bears to said sum of $14,214.94, with interest at the rate aforesaid, at the time of said loss. But in case of any loss, injury, or casualty other than by failure to collect insurance for full value of goods in case of loss by fire, said Cooke shall bear the whole risk thereof, and said Cooke hereby assumes all such risks, and covenants and agrees in such case to pay to said Blanchard the full sum of $14,214.94, with interest at the rate aforesaid; the same as if no such loss, injury, or casualty had occurred.

" That said Blanchard agrees, when said $14,214.94, with interest at the rate aforesaid, shall have been fully paid to him, to give to said Cooke a proper bill of sale of the goods herein

described, and to cancel and discharge this instrument, and to assign, transfer, and set over the lease of said store to said Cooke, which said Cooke hereby agrees to accept and assume, and pay the rent according to the terms therein expressed.

"It is further agreed, if said Cooke shall sell the stock of goods now owned by him and contained in the store in Burgess Block, Sandwich, Mass., that he shall pay the proceeds thereof, as soon as received by him, over to said Blanchard, on account of said sum of $14,214.94; but if said Cooke shall not sell the same, said stock shall be removed to said Southbridge, and become a part of the stock referred to therein, and subject to the conditions and terms of this contract."

The bill further alleged, that on July 12, 1883, the defendant took possession of the property named in the contract, and thereafter did business in said store as a retail dealer in dry goods, collecting the proceeds of the sales of such goods, and paying out of such proceeds store rent, taxes, insurance, and clerk hire, and buying therewith goods to supply and maintain his stock and regular course of business, a part of the said goods originally purchased and goods since that date purchased in the regular course of business being now in the said store; that the defendant had failed and neglected to take accounts of stock, and pay over the balance of the proceeds of sales, and to make and give trial balances, as provided in the contract, though often requested so to do by the plaintiff, but, in violation of his said agreement, had taken said proceeds, and appropriated a large sum thereof, namely, in all about $3,500 of such proceeds belonging to the plaintiff, to his own use, contrary to the conditions of the said contract, and had refused to pay said sum.

The bill further alleged, that on November 28, 1885, default having been then made as aforesaid by said defendant in making said payment, and said breach of the conditions contained in said contract then continuing, the plaintiff took possession of the goods, fixtures, and merchandise in said store, and since said date had had entire possession and control thereof, and claimed the title thereto, and the right to hold the same as a pledge, and as security for his said debt, as provided in said contract, and in trust for the purpose of having the same applied to the payment of the said debt due him; that the sum now due to the plaintiff

upon said debt, and interest, was in all about $11,500, and the value of the goods, fixtures, and merchandise was unknown, but was believed to be insufficient security for the payment of the sum due the plaintiff; that the plaintiff believes that the defendant is largely indebted to other creditors, and is unable to pay the same, and refuses to consent to any release of any right he has to said property; that if any fractional part of said goods has vested in the defendant at all, the same is of little value; and that the defendant has money in his hands, and accounts due him, from the sales of the goods, not returned or accounted for to the plaintiff, and belonging to him under the contract, to a larger amount in value than the value of the defendant's interest in the goods by means of any payments made by him therefor.

The prayer of the bill was for an account, for an injunction restraining the defendant from transferring his interest in the goods, and for a receiver to take possession of the goods, to sell them, and to hold the proceeds to be distributed according to the rights of the parties, and applied to the payment of the sums found due the plaintiff.

An injunction was issued as prayed for; and a receiver was appointed, who sold the goods, and paid the net proceeds into the hands of the clerk of the court.

On April 1, 1885, certain creditors of Cooke, who had been permitted to intervene, filed an answer, alleging, among other things, that since the filing of the bill Cooke had been adjudged an insolvent debtor; and on January 12, 1886, George P. Staples, who had been duly appointed assignee in insolvency of Cooke, was allowed to become a party, to file his answer, and to defend as assignee. On February 17, 1886, the assignee filed his answer, and, upon issue joined thereon, the case was heard and a final decree was entered on June 2, 1886. From this decree an appeal was taken to this court, which, on March 23, 1887, made a decision, reported 144 Mass. 207, reversing this decree.

The case was again heard on May 4, 1887, by *Aldrich*, J., who, in a report of the evidence of the facts found by him, and the questions of law raised at the hearing, stated: "On the day the case was set down for hearing, the defendant Staples

asked that issues might be framed for the jury. The juries had at that time been dismissed for the term, and there had been ample time while the juries were still in court to make such demand or request for trial by jury; for this and other reasons, forming ground for the exercise of the discretionary power of the court, the request for a trial by jury was denied, and the defendant appealed."

The evidence admitted and reported tended to show that the plaintiff took possession of the store in Southbridge on the alleged ground that Cooke had broken his agreement in overdrawing his account, and in failing to hand over to the plaintiff the entire proceeds, as claimed by the plaintiff, of the sale of the stock of goods in the store at Sandwich, which took place subsequent to the date of the agreement, the circumstances attending the sale and the disposition of the proceeds thereof being fully gone into at the hearing, and recited in the evidence. The judge's report, as to this part of the case, contained the following :

" It has been from the beginning the main contention between the parties as to whether the defendant had or not paid to the plaintiff all that he was required to pay by the terms of the contract between the parties, or whether, in other words, the defendant had not overdrawn his account as charged in the plaintiff's original bill. The plaintiff has claimed, in all hearings before this court, that the entire sum for which the defendant sold his Sandwich stock of goods was by the terms of the written contract to be paid to the plaintiff upon the indebtedness of the defendant to him under said contract. . . .

" I find that on or before November 28, 1884, the said Cooke, in violation of the terms and conditions of the said contract on his part, had drawn out of the said business a sum of money amounting to between $1,900 and $2,100 in excess of what he had a right to draw out; and that there was therefore, on that day, a breach of the said contract by said Cooke, in consequence of which breach the said Blanchard had the right to take possession of the goods, merchandise, and property described in the plaintiff's bill, and that, by virtue of such right, he did on that day take possession thereof and retain such possession until the same was delivered by order of this court to the receiver ap-

pointed by the decree of the court, to be sold and the proceeds thereof be held subject to the order of the court.

"I find that it was agreed in said contract, that, 'If said Cooke shall sell the stock of goods now owned by him and contained in the store in Burgess Block, Sandwich, Mass., that he shall pay the proceeds thereof, as soon as received by him, over to said Blanchard on account of said sum of $14,214.94; but if said Cooke shall not sell the same, said stock shall be removed to said Southbridge, and become a part of the stock referred to therein, and subject to the conditions and terms of this contract.'

"That said Cooke owned said stock, and soon after July 12, 1883, sold the same for $3,600, and that said Cooke entered the same upon his accounts, and paid to the said Blanchard the sum of $2,000 thereof, and only that sum, and used the balance thereof to pay his own private bills and bills due for the Sandwich stock, which were entered upon the books in the private or personal accounts of said Cooke.

"But I find that under said contracts said Blanchard was entitled to receive the whole of said sum of $3,600 in payment of the indebtedness of said Cooke to him, on account of said contract; and that said Cooke had no right to use it for the payment of his own private bills, or the Sandwich debts, and should not be allowed the same or any part thereof upon the accounts between said Blanchard and Cooke, under said contract, except so far as he had paid of the said $3,600 to said Blanchard.

"I find that if the said Sandwich stock was not included in the contract, and said Cooke was entitled to have the proceeds of said sale, and use the same to pay his own debts and Sandwich bills, then, in that case, Cooke had not overdrawn his accounts."

The judge, having found that Cooke had made certain payments to the plaintiff on account of his original indebtedness under the agreement, made a decree that payment should be made out of the fund in the hands of the clerk to the assignee, proportioned to such payments by Cooke, and that the balance should be paid to the plaintiff; and the assignee appealed to this court.

*F. P. Goulding & A. J. Bartholomew*, for the plaintiff.

*J. J. Myers*, for the assignee in insolvency.

C. ALLEN, J. The motion of the assignee, that issues be framed for a jury, was properly overruled, as coming too late. The assignee became a party to the cause and filed his answer in February, 1886, and proceeded to a hearing before the court, and a final decree was entered on June 2, 1886, from which an appeal was taken to this court, and the decree was reversed on March 23, 1887. The case was again set down for a hearing before the court, and on May 4, 1887, the day appointed for the hearing, he for the first time made application for issues for a jury. The presiding judge certifies that the juries had at that time been dismissed for the term, and that there had been ample time while the juries were still in court to make such request for a trial by jury. The proper time to present such request was before the hearing in 1886. By going into that hearing without presenting a request for a trial by jury, the assignee waived his right to such trial, if he had any such right before. And we think it a proper exercise of the discretionary power of the judge in respect to granting a jury trial, to refuse it at the time when the request was made. *Dole* v. *Wooldredge*, 142 Mass. 161, 179.

The assignee contends that the plaintiff did not in his bill allege any misappropriation by Cooke of the money received on the sale of the stock of goods at Sandwich, and therefore that evidence of such misappropriation was inadmissible. But we are of the opinion that it is too late to object to the admission of the evidence of such misappropriation, no special objection having been made at the hearing that the averments were not broad enough to cover it. The general charge in the bill was, that Cooke had failed and neglected to pay over the balance of the proceeds of sales, though often requested to do so by the plaintiff, but, in violation of his said agreement, had taken said proceeds and appropriated a large sum thereof, to wit, in all about $3,500 of such proceeds belonging to the plaintiff, to his own use. If an objection had been made, that, taken literally, this only charged a misappropriation of the proceeds of sales in Southbridge, and did not include the proceeds of the sale in Sandwich, it would have been competent for the court to allow an amendment. But the hearing proceeded, without objection, on the assumption that no amendment was necessary, and a full investigation was had of the sale of the Sandwich goods, and the

disposition of the proceeds. The presiding judge certifies, what indeed is apparent from a perusal of the testimony, that it had been from the beginning the main contention between the parties, whether Cooke had or had not paid to the plaintiff all that he was required to pay by the terms of the contract, or whether, in other words, he had not overdrawn his account; and that the plaintiff has claimed, in all the hearings, that the entire sum for which Cooke sold his Sandwich stock of goods was, by the terms of the written contract, to be paid to the plaintiff upon the indebtedness of Cooke to him under said contract. If it is doubtful whether the bill contains a sufficiently explicit averment in respect to the Sandwich goods, certainly at this stage of the case, no objection having been raised at the hearing, it is too late to found any substantial argument upon this ground. The plaintiff might even now amend by making this averment more specific.

The assignee further contends, that a breach of the agreement by Cooke to pay over to the plaintiff the proceeds of the sale of the Sandwich stock of goods, as soon as received by him, would not authorize the plaintiff to enter and take possession of the goods in Southbridge. In respect to this, the agreement was as follows: " For the security of said Blanchard, the legal title in said goods shall be and remain in said Blanchard until said sum of $14,214.94, with interest at the rate of seven per cent per annum, shall have been fully paid, it being agreed, however, that said title may vest in said Cooke in the proportion to the amount which at any time he shall have paid on account of said $14,214.94, and interest, said Cooke hereby covenanting and agreeing said Blanchard shall be the legal owner of a fractional part of the stock of goods in said store, whether it be these goods or goods subsequently purchased by said Cooke, which fractional part shall at all times bear the same proportion," etc. This was followed by later provisions giving further effect to Blanchard's right in respect to said goods. The proceeds of the sale of the Sandwich goods were to be applied on account of said sum of $14,214.94. It thus appears that Cooke distinctly agreed that Blanchard should be the legal owner of a fractional part of all the goods in Southbridge, whether then or thereafter purchased, until full payment of the $14,214.94. The former

decision of this court was, that if there had been a substantial breach of the contract by Cooke, then the plaintiff had the right to take possession while the default continued. 144 Mass. 207, 228. The objection now taken appears to be fully covered by the former decision.

This disposes, we believe, of all the questions of law presented upon the present appeal.                    *Decree affirmed.*