DANIEL W. DUNN *vs.* COMMISSIONER OF CIVIL SERVICE.

Berkshire.    December 15, 1931. — June 28, 1932.

Present: RUGG, C.J., CROSBY, WAIT, FIELD, & DONAHUE, JJ.

*Civil Service. Police. Words,* "Separated from the service."

Where the chief of police of a city, the police department of which was subject to the civil service law, believing a police officer to have been drunk on a certain occasion, demanded and received the policeman's resignation from the force, but the mayor and aldermen at a subsequent meeting voted to lay the resignation on the table and also voted to grant a request by the police officer for a leave of absence without pay, solely on the ground of his ill health and not as a punishment for his conduct on such occasion, no charges having been preferred against him and no opportunity for hearing having been given him, it was *held,* that the police officer was not removed nor suspended from the service for cause.

Where such a police officer was suffering from a nervous affliction which temporarily incapacitated him from performing his duties and was granted three months' leave of absence without pay on the ground of his ill health, he was "separated from the service" for such period within the meaning of Civil Service Rule 23.

Where such police officer did not request that he be put on the civil service commissioner's special list under paragraph 2 of said Rule 23, and the

commissioner did not consent to his reinstatement in accordance with paragraph 3 thereof after the expiration of such leave of absence, the officer as a matter of law could not maintain a petition for a writ of mandamus to compel his reinstatement.

PETITION, filed in the Supreme Judicial Court for the county of Berkshire on May 23, 1931, for a writ of mandamus "ordering . . . [the respondent] to authorize the employment of your Petitioner as policeman . . . and the payment of salary therefor"; and for general relief.

The case was referred to an auditor and afterwards was heard by *Pierce*, J., who ordered the petition dismissed as a matter of law and reported the case for determination by the full court. Material facts appear in the opinion.

In this court, the case was argued before *Rugg*, C.J., *Wait, Sanderson, & Field*, JJ., and, after the death of *Sanderson*, J., was referred on briefs also to *Crosby & Donahue*, JJ.

*R. C. Evarts & P. J. Moore*, for the petitioner.

*D. A. Foley*, Assistant Attorney General, for the respondent.

RUGG, C.J. This is a petition for writ of mandamus. The case was referred to an auditor. It was then heard on the pleadings and the auditor's report. The facts were found to be as stated in the auditor's report and it was ordered that the petition be dismissed as matter of law. The case was then reported to this court for determination. The material facts are these: The police department of the city of Pittsfield is subject to the civil service laws and to valid rules and regulations of the civil service commissioners. The petitioner was appointed to the police department of Pittsfield in 1913 and served as patrolman from that time to September, 1930, with the exception of a suspension for thirty days on October 15, 1919, for drunkenness and conduct unbecoming an officer. Otherwise, his service has been satisfactory. On September 6, 1930, an incident occurred between the petitioner and the chief of police of Pittsfield, wherein the former was quite violent and threatened the latter with severe bodily injury. Several police officers smelled liquor on the breath of the petitioner. The chief of police had reasonable ground to fear that the

petitioner might harm him or others, or do injury to himself. As a result, the petitioner was confined that night. He had drunk on that day two glasses of wine. The auditor found, however, that he was not intoxicated and that his conduct on September 6 was not due to the wine but to hysteria brought on by an overwrought nervous condition and to a nervous hypertension which temporarily affected his mind and reason. On September 7, the chief of police, being firmly of the opinion that the petitioner's condition on the previous day was due to intoxicating liquor, demanded the petitioner's resignation from the police department and told the petitioner that, if he did not receive it, he would prefer charges against the petitioner in the criminal court and take steps to remove him from the police department. The petitioner gave his written resignation to the chief of police, who left it with the city clerk and notified the respondent that the petitioner had resigned. No formal charges were made against him and he was not removed from the department. On September 8, the chief of police on request appeared before the mayor and board of aldermen in executive session and submitted later on request a statement in writing of his explanation of the incident of September 6. The board of aldermen voted to lay the petitioner's resignation on the table. On September 11, the petitioner requested the mayor and board of aldermen for a leave of absence for a period of not exceeding three months, on account of ill health, and this leave of absence without pay was granted solely on the ground of ill health and not as a punishment for his conduct of September 6. Notice of these transactions was transmitted to the respondent, who on September 18 informed the chief of police that in his opinion a person granted a leave of absence is separated from the service and could only be reinstated to his former position on request of the appointing officer and the approval of the respondent. Shortly before the expiration of the petitioner's leave of absence, he told the mayor that he felt he would be able to resume his duties as a police officer at the expiration of his leave, but the mayor told him he could not go back to his duties

because of the attitude of the respondent. The petitioner therefore did not report to the chief of police that he was ready for duty at the expiration of his leave. In the latter part of January, 1931, the petitioner appeared before the board of civil service commissioners accompanied by his attorney and asked that the decision of the respondent be reconsidered by the board. The board at that time confirmed that decision. The chief of police, pursuant to an order adopted by the board of aldermen, directed the petitioner to report for duty on March 27, 1931, as an emergency man but not with the powers of a police officer. Upon learning of this the respondent notified the petitioner that he was being employed in violation of the civil service law and rules and that his employment must cease. From September 6, 1930, to March 26, 1931, the petitioner performed no service as police officer and was not on the payrolls of the city. Neither the mayor nor the chief of police has filed charges against the petitioner for his conduct on September 6, 1930. The petitioner has never had a hearing before the mayor or board of aldermen of which he was given notice or at which he might have appeared with evidence of his true condition on September 6, 1930. The board of aldermen in what they did, and the mayor in what he did, acted upon the information obtained from various sources including the chief of police, the attorney for the petitioner, and the report of a disinterested physician.

It is provided by Rule 23, paragraph 2, of the Civil Service Rules, so far as here material: "Whenever a person in the Official Service is unable to work on account of sickness . . . whereby any person legally holding such position is separated from the service without fault or delinquency on his part, the name of such person shall be placed by the Commissioner on a Special List, if the applicant so requests in writing, and his name shall remain on such Special List for a period of two years from the date of such separation . . . . Thereafter, on requisition to fill any position, which in the judgment of the Commissioner can be filled from such Special List, the Commissioner, before certifying from the regular eligible list, may certify from the Special List

. . ."; and in paragraph 3: "With the consent of the Commissioner, upon good cause shown, an appointing officer may reinstate in the same position or in a position in the same class and grade any person who has been separated from the service; provided, however, that the Commissioner shall not allow reinstatement of a person discharged for cause."

Rule 23 in its paragraphs 2 and 3 has been held to be within the scope of the enabling statute and to be valid. *Police Commissioner of Boston* v. *Commissioner of Civil Service,* 278 Mass. 507, 509, and cases collected.

The question to be determined is whether the petitioner is within the scope of that rule. That depends upon the further inquiry whether, upon the facts already summarized, the petitioner has been "separated from the service" of the police department of Pittsfield within the meaning of those words in the rule. The facts plainly show that the petitioner was not removed or suspended for cause. Procedure to accomplish that result prescribed by G. L. c. 31, § 42A, as most recently amended by St. 1925, c. 220, § 2, has not been followed. The facts concerning the incident of September 6, 1930, are not of special significance except as they afford the setting for the present controversy. The petitioner was appointed to the police force of Pittsfield by the mayor and confirmed by the board of aldermen. See St. 1911, c. 732, Part I of which was adopted in November, 1911, as the charter of that city. His resignation appears to have been presented to those officers but was not accepted; in that action he acquiesced. He then requested and was granted a leave of absence for three months on account of ill health, but without pay. That leave of absence expired in December, 1930. It does not appear whether in truth he was able to resume performance of his duties at that time, although he stated to the mayor shortly before then that he expected that he would be able. He did not in fact present himself to the chief of police for duty until March 27, 1931, a period of something over six months after he ceased to perform service. Importance is not attached to this latter fact. It is assumed in favor of the petitioner

that, but for knowledge of the adverse attitude of the respondent, he would have offered himself for service at the expiration of his leave of absence.

The precise point, then, is whether absence from duty by a policeman for the cause here disclosed, for three months, constitutes separation from the service. It has been held that absence from duty due to sickness may constitute the separation from the public service of one protected by the civil service law. *Fernandez* v. *Mayor of New Bedford*, 269 Mass. 445. *Goldberg* v. *Commissioner of Civil Service*, 274 Mass. 300. Those decisions are authority to the effect that bodily disability may constitute separation from the public service. The fact that in those cases the absent public servant happened to receive benefits under the workmen's compensation act is irrelevant to the question whether the absence due to bodily disability constituted separation from the service.

Important rights are secured by statute to one who is a regularly appointed police officer under the civil service law. He shall hold office continuously during good behavior and cannot against his protest be removed, suspended, transferred to other service, lowered in rank or compensation, nor can his office be abolished, except upon specified proceedings to that end, including the opportunity to him to be heard before some tribunal. G. L. c. 31, § 42A, as most recently amended by St. 1925, c. 220, § 2. The statute makes no express provision touching interference due to sickness with the performance of public duty by those protected by the civil service law. Manifestly, sickness of public employees, and especially of police officers, has important bearing upon the efficiency of the public service. It concerns immediately the public welfare. It was within the province of the civil service commission to make rules touching this subject notwithstanding the provisions of said § 42A. Rule 23 was passed to this end. That rule does not undertake to determine the period of absence from the performance of duty which shall constitute separation from the service. That is left to be ascertained from all the material circumstances in each case as controversy

may arise. It is not necessary to attempt to make a rigid definition of what may constitute separation from the public service. The factors present in the case at bar disclose sickness of a peculiar and unfortunate nature, rendering impossible the performance of the duties of a patrolman. It is certain that the petitioner was in truth and fact doing nothing as patrolman during the period of his absence. He had no part in the work incident to his appointment as patrolman. For every practical purpose, so far as concerned preservation of order and protection of public safety, he was out of the department. There was a complete withdrawal and cessation from public work, although not the entire severance of the relation which would follow removal. *Bois* v. *Mayor of Fall River*, 257 Mass. 471, 472. Either the work usually performed by the petitioner while in service must have been done by a substitute appointee, or it must have been undone. The element of time is important in determining whether there has been such separation, but it is not decisive. See *Watts* v. *Watts*, 160 Mass. 464, 467. We are of opinion that the facts here disclosed constituted separation of the petitioner from the service, so that he came within the operation of Rule 23.

The facts do not show that the petitioner has complied with the terms of that rule so as to be entitled to relief. He has not requested in writing to be put upon the special list in accordance with paragraph 2 of the rule. It does not appear that the respondent has consented to the reinstatement of the petitioner upon the request of the appointing officer and upon good cause shown, in accordance with paragraph 3 of the rule.

The facts and the governing statute distinguish the case at bar from *Davie* v. *Lynch*, 164 App. Div. (N. Y.) 517, upon which the petitioner relies.

It is not necessary to examine the petitioner's requests for rulings one by one. There was no reversible error in their denial. The reasons leading to that conclusion have been stated.

*Order dismissing petition affirmed.*