MICHAEL J. HORRIGAN *vs.* MAYOR OF PITTSFIELD.

Berkshire.     September 21, 1937. — November 30, 1937.

Present: FIELD, DONAHUE, LUMMUS, & QUA, JJ.

*Civil Service,* Reinstatement after invalid retirement. *Constitutional Law,* Police power, Use of public funds for benefit of individual, Legislative control of municipalities. *Words,* "Reinstated."

G. L. (Ter. Ed.) c. 31, § 13, and Civil Service Rule 9 do not apply to an application for reinstatement under St. 1936, c. 287.

St. 1936, c. 287, providing for reinstatement without loss of compensation of employees of a municipality who had become separated from the classified civil service by retirement and whose retirement allowances had been discontinued because of invalidity in the retirement proceedings, was not a violation of the Constitution of this Commonwealth nor of the Fourteenth Amendment to the Federal Constitution even when applied to a police officer who, more than two years before the passage of the statute, was retired for inability to perform his duties fully and whose "pension" later was discontinued because the retirement was invalid.

A police officer of a city, after reinstatement by the commissioner of civil service pursuant to St. 1936, c. 287, was granted a writ of mandamus to compel the mayor of the city to recognize his restored status.

PETITION, filed in the Supreme Judicial Court for the county of Berkshire on January 8, 1937, for a writ of mandamus.

There was a hearing by *Qua*, J., who reserved and reported the case for determination by the full court.

*W. A. Heaphy*, for the petitioner.

*C. R. Alberti*, City Solicitor, for the respondent.

QUA, J.   The object of this petition is to secure to the petitioner full reinstatement for active duty in the police department of the city of Pittsfield.   No question of pleading has been raised by either party, and we therefore consider the case broadly in order to ascertain to what, if any, relief the petitioner is entitled upon the facts admitted by the pleadings and established by the findings of the single justice of this court before whom the case was tried. *Blanchard* v. *Cooke*, 147 Mass. 215, 222.

The decisive facts are these: On December 13, 1933, the petitioner held the position of patrolman within the classified civil service.   On that day he was informed that the city had retired him and had granted him a pension.   He thereupon ceased to perform his duties and became "separated from the classified civil service by reason of his retirement," as those words are used in St. 1936, c. 287, to which reference is hereinafter made.   At that time the petitioner was in poor health, and he has since remained in poor health, so that he has not been able to perform fully and properly the duties of a patrolman, but he has been able to perform those duties to a substantial degree.   He had asked to be retired because of incapacity, and his "pension" was granted on that ground.   Thereafter the city paid the petitioner certain sums for the month of December, 1933, and for the month of January, 1934, which sums were "paid and received as pension money supposed to be due."   On or about February 1, 1934, the respondent, as mayor, ordered the petitioner's name to be struck from the pension list, since which time the petitioner has received no pension and has not been restored to duty as a patrolman.   The petitioner brought an action against the city to recover instalments of his "pension," but this

court held that he could not recover because the city of Pittsfield had never validly accepted the provisions of G. L. (Ter. Ed.) c. 32, §§ 56–59, upon which the supposed pension rested. *Horrigan* v. *Pittsfield*, 293 Mass. 17. The petitioner had thus not only lost his supposed pension, but in the expectation of receiving the pension he had lost his rights to a hearing and to judicial review of the matter of his removal from the classified service in accordance with G. L. (Ter. Ed.) c. 31, §§ 42A, 42B. After the decision in *Horrigan* v. *Pittsfield* the Legislature passed St. 1936, c. 287, which reads as follows:

"Section 1.  Chapter thirty-one of the General Laws is hereby amended by inserting after section forty-six G, inserted by chapter four hundred and eight of the acts of nineteen hundred and thirty-five, the following new section: — *Section 46H.*  Any officer or employee of a city or town who has become separated from the classified civil service by reason of his retirement under the provisions of any general or special law, if his retirement is subsequently invalidated and his retirement allowance discontinued by reason of the illegality of, or a defect in, the proceedings relative to such retirement, shall, upon application to the commissioner within one year from the last payment of said retirement allowance be reinstated by the commissioner in the same position, or in a position in the same class and grade as that formerly held by him, without loss of compensation.

"Section 2.  Any officer or employee of a city or town whose retirement was invalidated, and whose retirement allowance was discontinued, for the reasons set forth in section one, prior to the effective date of this act, may apply for reinstatement under said section one within one year after said effective date and in such case the provisions of said section shall apply."

This act was approved May 22, 1936. Thereafter the petitioner applied to the commissioner of civil service under the act for reinstatement to his position as a patrolman, and on August 26, 1936, the commissioner duly approved

the application and on August 28 notified the respondent
in writing that the petitioner's reinstatement had been
approved and requested that the commissioner be informed
of the date when the petitioner should return to work.   On
August 31, the petitioner reported in person to the respond-
ent "for reinstatement" and the respondent denied that the
petitioner had been properly reinstated.   Under the charter
of Pittsfield the respondent is "the chief executive officer of
the city," charged with the duty "to keep a general super-
vision over the conduct of all subordinate officers."   He
may suspend any officer and may suspend any work or
payment for a period not exceeding seven days.   St. 1932,
c. 280, § 17.   See also § 2.   In his answer the respondent
admits that he and the chief of the police department
wrote a letter to the petitioner denying that the petitioner
had been reinstated and requesting the petitioner to undergo
a physical examination by the city physicians to determine
whether the petitioner was incapacitated.

It is not difficult to understand the meaning of the act of
1936 hereinbefore quoted and the purpose which it was
intended to serve.   An officer or employee who is in the
classified service has the right to hold his office or employ-
ment without removal, suspension or lowering in rank or
compensation, except in the manner specifically set forth
in statutes which assure to him the advantages of notice
and a hearing, and the privilege of judicial review.   G. L.
(Ter. Ed.) c. 31, §§ 42A, 42B, 43, 45, 46.   But an officer or
employee who retires or is retired by the board of retire-
ment or by the retiring authority under G. L. (Ter. Ed.)
c. 32, or under any special law, is separated from the service
by an entirely different method under which he receives
compensation in the shape of a pension.   When, however,
there has been a form of retirement which is "subsequently
invalidated," and when the retirement allowance has been
"discontinued by reason of the illegality of, or a defect in,
the proceedings relative to such retirement," it may well
occur that the person affected has in fact ceased to work
and has broken off all connection with his office or employ-
ment and hence has "become separated from the classified

civil service," and has therefore lost his right to a hearing and judicial review under the civil service laws without at the same time acquiring a legal pension. As to what may constitute separation from the service see *Dunn* v. *Commissioner of Civil Service*, 279 Mass. 504; *Feehan* v. *Chief Engineer of Fire Department of Taunton*, 264 Mass. 178; *Skold* v. *Chief of Fire Department of Cambridge*, 266 Mass. 513; *Fernandez* v. *Mayor of New Bedford*, 269 Mass. 445; *Goldberg* v. *Commissioner of Civil Service*, 274 Mass. 300; *Smith* v. *Director of Department of Public Safety of Lawrence*, 290 Mass. 307; *Ferrante* v. *Higgiston*, 296 Mass. 208; G. L. (Ter. Ed.) c. 31, §§ 46B–46G.

Thus the purpose of the statute seems to be to protect a classified officer or employee whose retirement may prove invalid against the possibility of losing, in addition to his pension, rights under the civil service laws which may still be valuable. This purpose is accomplished by reinstating him to the classified position which he formerly held or to a position in the same class or grade. This does not mean that he acquires any permanent right to hold his office or employment irrespective of his ability to perform the work or of other causes which might justify his suspension or removal. The use in the statute of the word "reinstated" indicates that what is meant is reëstablishment in the former status with all the ordinary incidents of that status. Thus the employee, at once upon reinstatement, or at any time thereafter, can be suspended or removed by the officer or board having the power of suspension or removal over the classified position to which the employee has been reinstated, in the manner and for the causes prescribed and permitted by the civil service laws. Such reinstatement is more than an empty form, because it restores to the officer or employee his rights to notice, hearing, and review which he lost when he became separated from the service by an invalid retirement, and it also leaves him in a position to be retired in a legal manner, if his retirement was invalidated by reason of some merely formal defect.

In the case at bar the petitioner became separated from

the classified service by reason of his retirement; his retirement has been invalidated and his allowance discontinued; and upon application to the commissioner he has been reinstated as provided in the act.   His application to the commissioner for reinstatement was not defective for failure to comply with G. L. (Ter. Ed.) c. 31, § 13, or with Civil Service Rule 9, as neither the statute nor the rule applies to an application for reinstatement under the act of 1936. It follows that this case is within the statute of 1936, and if that statute, as applied to this case, is a valid exercise of legislative power, it is the duty of the respondent to recognize that the petitioner is again a member of the police force of Pittsfield and to treat him accordingly.

But the respondent stoutly contends that the statute of 1936 is in conflict with the Constitution of the Commonwealth and with the Fourteenth Amendment to the Constitution of the United States in that it compels the reinstatement of an officer or employee without regard to his qualifications or fitness for work, and in that it operates retroactively to compel the city to pay to the petitioner his full salary for a period before the statute was passed during which the petitioner rendered no service.   These contentions cannot prevail.   If the provision of the statute for payment to the officer or employee during the time while he is separated from the service or doing no work were no more than a pure gift from public funds to an individual, it would be plainly beyond the power of the Legislature. *Lowell* v. *Boston*, 111 Mass. 454.   *Mead* v. *Acton*, 139 Mass. 341.   *Kingman* v. *Brockton*, 153 Mass. 255.   *Opinion of the Justices*, 155 Mass. 598.   *Opinion of the Justices*, 204 Mass. 607.   *Opinion of the Justices*, 211 Mass. 624.   *Salisbury Land & Improvement Co.* v. *Commonwealth*, 215 Mass. 371, 377.   *Whittaker* v. *Salem*, 216 Mass. 483.   If, on the other hand, the enactment is designed to serve a genuine public purpose in pursuance of the broad power granted to the Legislature to make all manner of wholesome and reasonable laws as they shall judge to be for the good and welfare of the Commonwealth, it is not unconstitutional merely because, through its operation, money may come to an

individual. Thus legislation granting pensions to persons formerly in the military or naval service has been sustained because of the supposed public benefit derived from making such service attractive and honorable. *Opinion of the Justices*, 190 Mass. 611. *Opinion of the Justices*, 211 Mass. 608. *Rich* v. *Mayor of Malden*, 252 Mass. 213. *Gray* v. *Salem*, 271 Mass. 495, 498. *United States* v. *Hall*, 98 U. S. 343, 346. See *Moffatt* v. *Mayor of Lowell*, 215 Mass. 92, 95. On the same general principle it has been said that the Legislature, if convinced that a public and not a purely private interest will be promoted, may authorize the payment to the widow of a deceased public officer of salary which would have accrued for a period after his decease. *Opinion of the Justices*, 175 Mass. 599. *Opinion of the Justices*, 240 Mass. 616.

In accordance with the principles hereinbefore outlined it was competent for the Legislature to determine that St. 1936, c. 287, would operate for the advantage of the public welfare and not as a mere gift statute for the benefit of the few individuals who might come within its terms. That statute is general in its operation throughout the Commonwealth. It is intended to strengthen the civil service laws, the purposes of which are to bring about the selection of civil officers and employees by merit and to insure security of tenure after appointment. It is designed to bridge a possible gap between a civil service status and a status of retirement. The purposes both of the civil service laws, with their protection of tenure, and of the retirement laws are constitutional purposes. *Opinion of the Justices*, 138 Mass. 601. *Opinion of the Justices*, 166 Mass. 589. *Barnes* v. *Mayor of Chicopee*, 213 Mass. 1, 4. *Driscoll* v. *Mayor of Somerville*, 213 Mass. 493. *Selectmen of Milton* v. *Justice of the District Court of East Norfolk*, 286 Mass. 1. *Goodale* v. *County Commissioners*, 277 Mass. 144, 150. *Cogan* v. *Cambridge Retirement System*, 294 Mass. 577. The act of 1936 is a comparatively slight extension of existing laws. Presumably an officer or employee would in most instances rely upon the supposed authority of the officer or board purporting to retire him, and he is in no position to dictate

to them their method of procedure. If he fails to contest his retirement (see *Mayor of Somerville* v. *Justices of the Police Court of Somerville,* 220 Mass. 393) and so becomes separated from the civil service, and if his retirement is invalidated, it may be thought that he has suffered an injustice. Recognition of a *quasi* moral obligation tends to inspire public confidence in the justice of the State in its dealings. That is an element to which weight may be given in determining whether the object of an enactment is the promotion of the public welfare as contrasted with the making of a private gift from public funds. *New Orleans* v. *Clark,* 95 U. S. 644, 653.. These considerations apply to instances which may have occurred before the passage of the act as well as to those occurring afterward.

When it is established, as we think it is in this instance, that the purpose of the statute as a whole is within the general scope of legislative power, the objection that the act imposes upon the city as a corporate entity a new liability by statutory fiat without an equivalent return ceases to have force. Municipal corporations are both creatures of the State and instrumentalities through which the State acts. In the performance of public functions they may be required, within rational limits, to assume new liabilities without their consent and without reimbursement. In *Attorney General* v. *Williams,* 174 Mass. 476, 481, this court said that the Legislature may require any of the political subdivisions of the Commonwealth "to bear such share of the public burdens as it deems just and equitable," and again that "Very wide discretion is left with the law-making power in this particular." Although conceivably there might be instances of the unreasonable and arbitrary imposition of burdens upon selected municipalities which would be held beyond the reach of legislative discretion, the rule itself is so firmly established, as far as this Commonwealth is concerned, that it will be enough to cite some of the cases without further discussion. *Agawam* v. *Hampden,* 130 Mass. 528. *Scituate* v. *Weymouth,* 108 Mass. 128. *Kingman, petitioner,* 153 Mass. 566. *Hodgdon* v. *Haverhill,* 193 Mass. 406, 410. *Boston, petitioner,* 221 Mass. 468, 473.

*Lee* v. *Lynn,* 223 Mass. 109, 112. *Chelsea* v. *Treasurer &
Receiver General,* 237 Mass. 422, 431. *County of Essex* v.
*Newburyport,* 254 Mass. 232. *Gray* v. *Salem,* 271 Mass.
495, 498. *Goodale* v. *County Commissioners,* 277 Mass. 144.
See also *Hunter* v. *Pittsburgh,* 207 U. S. 161, 178; *Trenton*
v. *New Jersey,* 262 U. S. 182; *Williams* v. *Mayor & City
Council of Baltimore,* 289 U. S. 36.

The scheme of the instant statute whereby each munici-
pality is required to sustain the expense of the application
of the law to cases arising among its own officers or em-
ployees may in rare instances impose a substantial burden,
but there have also been cases where enforcement of other
tenure provisions of the civil service laws has produced
similar burdens. The invalidity of a purported retirement
may usually, with diligence, be discovered before the lapse
of any great time, and after reinstatement the municipality
may protect itself by speedy suspension and removal of the
reinstated officer or employee, if he is unable to render ade-
quate service. The plan is neither unreasonable nor arbi-
trary. It is not essential that there be complete equality
and equity in the sharing of the burden. *Duffy* v. *Treasurer
& Receiver General,* 234 Mass. 42, 52. *Opinion of the Justices,*
234 Mass. 612, 620. *Boston* v. *Treasurer & Receiver General,*
237 Mass. 403, 420. *Chicago* v. *Sturges,* 222 U. S. 313. The
cost of mitigating that which is deemed to be a public evil
may sometimes be placed even upon individual citizens in
connection with whose business the evil arises. *Howes
Brothers Co.* v. *Unemployment Compensation Commission,*
296 Mass. 275. *Danforth* v. *Groton Water Co.* 178 Mass.
472. See *Nebbia* v. *New York,* 291 U. S. 502, 526–530.

It follows that the act of 1936 does not violate either the
Federal Constitution or the Constitution of the Common-
wealth, and that the petitioner is entitled to relief by man-
damus. As the question of the constitutionality of the act
as applied to this petitioner must eventually be determined
and has been fully argued in this case, we have preferred to
deal with that question. We do not decide whether the
respondent's accountability as mayor for the finances of
the city is sufficient to give him the interest necessary to

raise such a question. See *McGlue* v. *County Commissioners*, 225 Mass. 59; *Horton* v. *Attorney General*, 269 Mass. 503, 513.

A peremptory writ of mandamus is to issue, commanding the respondent to recognize the petitioner as reinstated to his former office in the police force of the city of Pittsfield.

*So ordered.*