## WILLIAM B. MOFFATT *vs.* MAYOR OF LOWELL.

Middlesex.    March 13, 1913. — May 24, 1913.

Present: RUGG, C. J., HAMMOND, LORING, SHELDON, & DE COURCY, JJ.

*Police,* Pension.    *Pension.    Civil Service.*

Under St. 1909, c. 188, providing that, in cities other than Boston which accept the provisions of the act, "any member of the police department," whose mental or physical condition or length of faithful service fulfils the requirements of the act, may be retired "at his own request, or at the request of the chief or superintendent of police" and thereafter shall receive a pension, a superintendent of police lawfully may be retired and pensioned.

In St. 1909, c. 188, providing for the retirement and pensioning of members of the police department in cities other than Boston which accept the provisions of the act, there is nothing which confines the giving of pensions to those who have been appointed under the civil service rules.

The provision of § 3 of St. 1903, c. 428, that members of the police department who are retired and pensioned under the provisions of that act in case of an emergency may be called upon for such temporary service in the department as they may be fitted to perform and during such service shall be entitled to full pay, does not require a person so retired to reside constantly in the city that pays him such a pension during the time that he is receiving it, and he does not lose his right to receive the pension by being absent from the Commonwealth during one half of each year, if he keeps the police department informed of his whereabouts and is ready at any time to return and perform temporary service whenever it may be required of him.

There is nothing in § 3 of St. 1903, c. 428, that requires a member of the police department of a city, who has been retired and pensioned under that statute as amended by St. 1909, c. 188, to keep the mayor of the city informed of his whereabouts during absences from the city, even assuming that under the charter of the city the mayor is the head of the police department; and consequently, upon a petition for a writ of mandamus to compel the mayor of a city to issue a warrant for the payment of such a pension, it is not necessarily decisive against the petitioner that he failed to notify the mayor of his whereabouts during such absences.

PETITION, filed on November 25, 1912, for a writ of mandamus directed to the mayor of the city of Lowell, commanding him to execute and deliver to the city treasurer a warrant for the amount of pension alleged to be due to the petitioner as a member of the police department retired from active service and placed on the pension roll under the provisions of St. 1903, c. 428, as amended by St. 1909, c. 188.

The case was heard by *Morton*, J. The material facts are stated in the opinion. The justice ruled that the petitioner did not cease to be a member of the police department when he became superintendent of police; that the statute does not provide that the pension should be dependent in whole or in part on the petitioner's remaining in Lowell or in this Commonwealth, so as to be subject to the call of the mayor or of the board of police for such temporary service as he might be fitted to perform; and that the petitioner was entitled to a writ of mandamus as prayed for. He ordered that a peremptory writ should issue, and, at the defendant's request and with consent of the plaintiff, reported the case for determination by the full court.

*J. R. Benton*, (*M. M. Johnson* with him,) for the petitioner.

*J. J. Hennessy*, for the respondent, submitted a brief.

RUGG, C. J. This is a petition for a writ of mandamus to compel the mayor of Lowell to issue a warrant for the payment of a pension alleged to be due to the petitioner. The material facts are that the petitioner had been a member of the police force of the city of Lowell in subordinate positions for more than twenty years when, in 1901, he was appointed superintendent of police. He held this office until 1909, when, upon his request to be retired and pensioned, the board of police passed an order granting the request in due form, with a recital that he had performed faithful service as a member of the department for more than twenty years continuously, and in their judgment was disabled from useful service in the department. St. 1903, c. 428, and acts amendatory thereto had been accepted by Lowell. The pension was paid until December 31, 1911. The petitioner each year since his retirement has been absent from the Commonwealth about six months, and has kept the superintendent of police, the messenger of the police department and the city treasurer notified of his whereabouts, and was and is at all times ready to return to Lowell and perform active service if required, but at no time has he so notified the respondent, as mayor.

1. The respondent contends that the law does not provide for the retirement on a pension of the superintendent of police. The material words of the statute (St. 1909, c. 188, amending

St. 1903, c. 428) are printed in a footnote.* It seems plain that on general principles the head of the department of police is a member of that department. The general in chief of an army and the admiral of a navy are members respectively of these branches of the service. A superintendent of police must be clothed with the ordinary powers of a police officer to make arrests and perform other duties of a police officer. It would require clear words of the statute to exclude him from being considered a member for pension purposes. The language of the statute is that "any member of the police department" may be retired "at his own request, or at the request of the . . . superintendent of police." The power conferred upon the superintendent to request the retirement of any other member of the department does not show that he is excluded from the general provision that any member may make such request. See *Devery* v. *Coler*, 173 N. Y. 103. The statute does not manifest any intention to confine pensions to those who have been appointed under the civil service rules. The circumstance that the petitioner may not have been so appointed is immaterial. See *Barnes* v. *Mayor of Chicopee*, 213 Mass. 1.

2. The petitioner was not required to reside constantly in Lowell while receiving the pension. The statute does not exact this expressly, but the respondent argues that it does so impliedly by § 3 of St. 1903, c. 428, authorizing the board of police or the

---

* "The mayor and aldermen, or the board of police of any city where such boards are established, except Boston, which, by vote of its city council accepts the provisions of this act, shall, at his own request, or at the request of the chief or superintendent of police, if, in the judgment of said board, he is disabled for useful service in said department, retire from active service and place upon a pension roll any member of the police department of such city whom the city physician of such city certifies in writing to be permanently disabled, mentally or physically, by injuries sustained through no fault of his in the actual performance of duty, from further performing duty as such member, or any member of said department who has performed faithful service therein for not less than twenty years continuously, if, in the judgment of said board, such member is disabled for useful service in the department, and every member so retired shall annually receive as a pension one half the amount of compensation received by him at the time of his retirement, such amount to be paid by the city, which shall appropriate money therefor."

mayor in cities having no board of police, "in case of an emergency, to call upon any person so pensioned for such temporary service in the department as he may be fitted to perform, and during such service he shall be entitled to full pay." It was within the power of the Legislature to make the payment of a pension dependent upon any conditions. If it had been its purpose to make continuous residence in the city paying the pension a condition of receiving it, the expression of such an intent would have been simple. There is no physical incompatibility between a residence outside the Commonwealth and a response by the pensioner to temporary emergency service. That the petitioner's absence from the Commonwealth during one half of each year cannot be said upon the record to have been inconsistent with a response upon his part to an emergency summons is apparent from the agreed fact that he kept the police department informed of his whereabouts and was at any time ready to return and perform active temporary service if it was required of him. A pension is a reward given for conspicuous or long continued faithful public service rendered in the past. It is not compensation for labor performed concurrently with its payment. There is, therefore, no inherent necessity that one receiving the pension be a resident within the territory of the pensioning power.

3. There is nothing in the statute which requires the petitioner to keep the respondent informed of his whereabouts. If it be assumed that the mayor of the city is the head of the police department under St. 1911, c. 645,* in view of all the facts, this circumstance of failure to notify the mayor is not decisive against the petitioner.

*Writ to issue.*

---

* The amended charter of the city of Lowell.