## CONTINENTAL CASUALTY CO. v. WILLIS.

Circuit Court of Appeals, Fourth Circuit.
October 16, 1928.

No. 2742.

William C. Coulbourn and Robert G. Butcher, both of Richmond, Va., for appellant.

Branch Johnson, of Richmond, Va., for appellee.

Before WADDILL, PARKER, and NORTHCOTT, Circuit Judges.

NORTHCOTT, Circuit Judge. This is an appeal from a judgment of the District Court of the United States for the Eastern District of Virginia, at Richmond, in an action at law wherein Annie Scott Willis, the appellee, was plaintiff, and the Continental Casualty Company, appellant, was defendant below. The parties will be referred to here, respectively, as plaintiff and defendant.

Plaintiff was the beneficiary in an accident insurance policy, issued to Bessie Milton Willis, her sister. Insured was a trained nurse. The pertinent clauses of the policy are:

"The insurance given by this policy is against loss of life, limb, limbs, sight or time resulting from personal bodily injury (suicide or self-destruction while either sane or insane not included) which is effected solely and independently of all other causes by the happening of an external, violent and purely accidental event, all in the manner and to the extent hereinafter provided. * * *

"Blood poisoning or septicæmia resulting directly from bodily injury shall be deemed to be included in the term 'bodily injury.'"

Insured in the practice of her profession contracted septicæmia, and went to a hospital in Richmond, where she died after an illness of about three weeks. On first being examined by physicians an abrasion or break was found in the skin of the ball of the index finger of deceased's right hand, and it was the uncontradicted evidence that her death was caused by septicæmia. It is admitted that the germs of the disease entered through the abrasion on her finger.

It is admitted that the policy was in force at the time of the death of insured, and that the requirements of the policy as to notice and proof of death had been complied with.

There was evidence to the effect that insured had repeatedly used a disinfectant, the use of which was usual and proper, and which ordinarily would not cause such an abrasion or puncture of the skin, as insured had on her finger, but which might have produced such a result when improperly used or when used by one whose skin was unusually tender or especially susceptible to cracking from its use. The evidence on this question tended to prove that the break in insured's skin on her finger was caused by a puncture rather than by the use of the disinfectant.

In his charge to the jury, the trial judge said: "If the jury are satisfied by a clear preponderance of the evidence that there was an injury, visible external injury, as a result of which a germ was taken into the system which eventually resulted in death, and that that injury occurred either as a result of contact with some other object, unintentional contact, or that it resulted from the use of some medicine or antiseptic solution, which in the ordinary course of events in its careful use would not have occurred, then it is my opinion the jury would, in such circumstances, be justified in finding a verdict for the plaintiff." To this charge, the attorneys for the defendant objected, and the alleged error in the charge is the main point relied upon here.

The court also refused to instruct the jury, on motion of defendant's attorneys, that: "If insured washed her hands in Lysol, intending to wash her hands in Lysol, and doing everything and nothing more than she intended to do, there was no liability upon the defendant company, even though the result of such washing was unexpected."

The insured was a trained nurse by profession, and it can readily be understood how the provision as to septicæmia, commonly known as blood poisoning, would especially appeal to one following a profession, peculiarly liable to the attacks of this disease. The contract of the policy was to insure against this disease if "resulting directly from bodily injury * * * effected * * * by the happening of an external, violent, or purely accidental event."

The elaborate argument of appellant's counsel is based on what we conceive to be a false premise, that is, that the language in the policy, "personal bodily injury which is effected * * * by the happening of an external, violent and purely accidental event," has exactly the same significance as the standard expression, "bodily injury effected by violent, external and accidental means." Surely "accidental event" does not have, nor can it possibly have, the same significance or meaning as "accidental means." An event is the culmination or end that the "means" may have produced or brought about. There is the same relationship between means and the event that results, that there is between cause and effect.

The means may not have been in any way accidental, yet the event because of some unknown and unknowable factor highly accidental.

An "accident" as defined by Webster is: "An event which takes place without one's foresight or expectation; an event that proceeds from an unknown cause, or is the unusual effect of a known cause, and therefore not expected."

This definition of an accident has received the approval of many courts (Fidelity & Casualty Co. v. Stacey's Ex'rs [C. C. A.] 143 F. 271, 274, 5 L. R. A. [N. S.] 657, 6 Ann. Cas. 955), and it has been supplemented by the Supreme Court's declaration that an "accidental event" is one " ³ * * 'happening by chance; unexpectedly taking place; not according to the usual course of things;' or not as expected." U. S. Mutual Acc. Ass'n v. Barry, 131 U. S. 100, 9 S. Ct. 755, 33 L. Ed. 60.

█ The deceased was insured against septicæmia resulting from the happening of an external, violent, and purely accidental event, and whether the breaking of the skin of the deceased's finger was caused by pricking it, or was the unexpected and unusual result of the proper use of the disinfectant, in either case it was an accidental event, and came within the meaning of the words of the policy.

But even were attorneys for the defendant correct in their assumption that accidental event and accidental means have "exactly the same significance," yet under the holding in the case of the Mutual Life Ins. Co. of New York v. Dodge, 11 F.(2d) 486; recently decided by this court, the defendant would be liable. In that case, in a well-reasoned opinion, Judge Parker says:

" 'Accidental' is defined in Webster's Dictionary as 'happening by chance, or unexpectedly; taking place not according to the usual course of things; casual; fortuitous; as an accidental visit.' And in defining the term 'accidental means' Corpus Juris says: 'Where the effect is not the natural and probable consequence of the means which produce it—an effect which does not ordinarily follow and cannot be reasonably anticipated from the use of the means, or an effect which the actor did not intend to produce and which he cannot be charged with a design of producing—it is produced by accidental means.' 1 C. J. 427.

"Cooley's Briefs on Insurance, at page 3156, gives practically the same definition. Judge Sanborn, speaking for the Circuit Court of Appeals of the Eighth Circuit, says: 'An effect which is the natural and probable consequence of an act or course of action is not an accident, nor is it produced by accidental means. It is either the result of actual design, or it falls under the maxim that every man must be held to intend the natural and probable consequence of his deeds. On the other hand, an effect which is not the natural or probable consequence of the means which produced it, an effect which does not ordinarily follow and cannot be reasonably anticipated from the use of those means, an effect which the actor did not intend to produce and which he cannot be charged with the design of producing, * * * is produced by accidental means. It is produced by means which were neither designed nor calculated to cause it. Such an effect is not the result of design, cannot be reasonably anticipated, is unexpected, and is produced by an unusual combination of fortuitous circumstances; in other words, it is produced by accidental means.' Western Com. Travelers' Ass'n v. Smith, 29 C. C. A. 223, 85 F. 401, 40 L. R. A. 653, approved in Ætna Ins. Co. v. Brand (C. C. A. 2d) 265 F. 6 [13 A. L. R. 657]."

"Mr. Justice Blatchford, speaking for the Supreme Court of the United States, says: 'If a result is such as follows from ordinary means, voluntarily employed, in a not unusual or unexpected way, it cannot be called a result effected by accidental means; but if, in the act which precedes the injury, something unforeseen, unexpected, unusual occurs, which produces the injury, then the injury has resulted through accidental means.' Mutual Accident Ass'n v. Barry, 131 U. S. 100, 9 S. Ct. 755, 33 L. Ed. 60."

The Dodge Case is cited and approved in Newsoms v. Commercial Casualty Ins. Co., 147 Va. 471, 137 S. E. 456, 52 A. L. R. 363.

The Barry Case, supra, is the leading case in the Supreme Court on this question, and undoubtedly sustains the position taken by this court in the Dodge Case.

█ The cause of the death of the insured was septicæmia, which was directly caused by the entrance of a germ through the broken or punctured skin of insured's finger; the break or puncture was directly caused by violent, external, and purely accidental means within the meaning of the policy, which was especially made to cover septicæmia contracted under precisely the conditions existing in this case.

The case was properly submitted to the jury, and there was ample evidence upon

which to base the verdict. There was no error in the charge of the learned trial judge, or in the trial, and the judgment of the District Court is affirmed.