## CONTINENTAL CASUALTY CO. v. POUQUETTE.*

Circuit Court of Appeals, Ninth Circuit.
November 5, 1928.

No. 5518.

*Rehearing denied January 14, 1929.

Chalmers, Fennemore & Nairn, J. Early Craig, Henry W. Allen, and Richard Fennemore, all of Phœnix, Ariz., for appellant.

C. F. Ainsworth, of Phœnix, Ariz., for appellee.

Before GILBERT, RUDKIN, and DIETRICH, Circuit Judges.

DIETRICH, Circuit Judge. This suit was brought by the beneficiary to recover upon an accident insurance policy issued by the defendant upon the life of one Simon Pouquette, who died shortly after the wreck of an automobile which he was driving. The policy contains the usual clause restricting the coverage to loss of life resulting, without other contributing cause, from bodily injury effected solely by the happening of a purely accidental event. Appellant's principal assignment is that the court erred in denying its motion for a nonsuit or directed verdict.

It is either undisputed, or there is substantial evidence to establish, that deceased was a sheep man about 55 years old, with no known ailment, except that at times he had slight rheumatism in his legs. He resided at or near the town of Wickenburg, Ariz., and the day before the accident he had for the most part spent in Phœnix, awaiting the repair of his automobile, a seven-passenger Studebaker. The car was turned over to him some time between 9 and 10 o'clock at night, and thereupon he started for his home, closely followed by a friend and a relative, who had spent the day with him, riding in another car. After driving for some distance, it was observed that his brakes were smoking. No mechanic being available, the party stopped two or three times to cool the brakes by pouring water upon them, and thereafter they proceeded at a moderate speed of from 20 to 25 miles an hour, and the car gave no further trouble. About 12 o'clock at night, just before reaching a concrete culvert, the car gradually passed from the right-hand to the left-hand side of the road and plunged into a ditch against an embankment in such manner as to bring it to a sudden stop in an upright position. Arriving very soon thereafter, the two men who were in the rear car found Pouquette lying over the steering wheel, the stock or post of which was bent. He was moaning, but was unable to speak, and was apparently unconscious. He was at once taken into the other car, but died 15 or 20 minutes later.

The condition in which the car was found clearly indicates impact with the bank of great violence. As stated by one of the mechanics, who went out the next morning to get the car: "It was pretty badly wrecked. The front end was stove in pretty badly. The frame was bent. The front end of both sides of the frame was bent back under. The axle was bent and the left front wheel was caved under and the steering post was so badly bent that we had to use a dolly to take the car back to Wickenburg. The front wheels would not turn and it was pretty badly smashed up in front." It was also observed at that time that the track left the right-hand side of the road from 100 to 200 yards back, and gradually passed to the left side at the point of the wreck. Except for some slight wounds on the face, which were apparently without significance, the body of the deceased showed no cuts, abrasions, or bruises.

Upon a careful consideration of the record, we find appellant's contention to be wholly devoid of merit. Not only was the evidence sufficient to go to jury, but we are inclined to think a verdict for the defendant would have been highly unreasonable. Against the natural inference that Pouquette was killed as a result of the accident, defendant seeks to oppose the theory of "heart failure." Admittedly there is no evidence that he had ever suffered from any disease or infirmity of the heart. He was apparently in good health prior to the accident, and he had been under no unusual mental or physical strain. In short, the theory is put forward, not because it is affirmatively supported by the evidence, but to meet the necessity of explaining the death, if accidental means be rejected as the proximate cause thereof.

Defendant's real contention is that the inference of death by accidental means is completely repelled by two circumstances. The first is that from a point 100 yards to a quarter of a mile (the testimony takes that range) back of the place where the car was wrecked it gradually passed from the right-hand to the left-hand side of the road; the argument being that at such point the car ceased to be under Pouquette's control, and that he so lost control as a result of a heart attack, from which he later died. It may be possible, but we are inclined to think wholly improbable, that with no hand at the wheel a car would proceed along an uneven country highway on substantially

960

a straight line, and within the narrow width of the highway, for that distance. But, be that as it may, the deceased had been active all the day before, he was alone and going at a moderate speed, and the accident occurred about 12 o'clock at night, after he had driven for more than two hours. It is much more likely that, with his hands on the wheel, he absent-mindedly or drowsily ceased to exercise full control. That "falling asleep at the wheel" is a peril of lone drivers, at night, is a matter of common knowledge.

The other circumstance relied upon is the fact that there were no cuts or bruises upon the body. Under the testimony, it would not be at all unreasonable to conclude that Pouquette, clothed as he was, might have been thrown forward against the smooth rim of the wheel with sufficient force to cause death without leaving any external marks. But, if we disregard the more or less conflicting opinions in evidence on that point, we still have these incontrovertible facts: Immediately after the accident Pouquette was found slouched forward over the steering wheel; he was still alive, but in pain and unable to speak; the post or stem of the steering wheel was bent. The fact that the post was bent is indubitable proof that he was thrown against it with great force. There is no suggestion in the record that such a violent impact would be less likely to leave external marks upon the body of one stricken with "heart failure," but alive, than in the case of one in normal health, and we take it that a blow which was sufficient to bend the steering post, and generally to wreck the front end of a heavy automobile, might also be sufficient, when directed against the abdomen or chest of the human body, to cause death by shock or internal injury of some character. At least, we are not disposed to hold as a matter of law such a result to be improbable.

The only other specification involves an incident occurring during the argument to the jury. What counsel for the defendant had stated in his argument does not appear, but in his closing address counsel for plaintiff, referring to him, said: "He says we haven't made out a case. He has argued that to the court twice, to my certain knowledge, and the court says we have." Whereupon defendant's counsel, objecting to the remark, asked that the jury be instructed to disregard it. Counsel for the plaintiff thereupon again made reference to the assertion of defendant's counsel that plain-

tiff had not made a case, whereupon the court of its own motion stopped him. Upon his attempt to explain his position, a short colloquy ensued between the court and counsel for both sides, which was followed by an instruction from the court to the jury to disregard the remarks objected to. Counsel for defendant made no motion that a mistrial be declared, and in short the court granted in full the only request he at any time made. The assignment is thought to be without merit.

Affirmed.