### PRUDENTIAL INS. CO. OF AMERICA v. BIALKOWSKI.

#### No. 4054.

Circuit Court of Appeals, Fourth Circuit.
Oct. 6, 1936.

Rehearing Denied Nov. 9, 1936.

Thomas B. Gay, of Richmond, Va. (Irvin G. Craig, of Richmond, Va., on the brief), for appellant.

Thomas A. Williams, of Richmond, Va. (L. C. O'Connor, of Richmond, Va., on the brief), for appellee.

Before PARKER, NORTHCOTT, and SOPER, Circuit Judges.

NORTHCOTT, Circuit Judge.

This is an action at law instituted by the appellee, a citizen of the state of Virginia, herein referred to as the plaintiff, against the appellant, a New Jersey corporation, herein referred to as the defendant, in the law and equity court of the city of Richmond, Va., in May, 1934. The cause was removed, by the defendant, to the District Court of the United States for the Eastern District of Virginia, at Richmond.

The plaintiff, as the named beneficiary in an insurance policy issued by the defendant, sued to recover accidental death benefits in the sum of $5,000, for the death of plaintiff's brother, George J. Bialkowski, who died on November 18, 1933.

The defendant promptly paid the $5,000 death benefit, provided for in the policy, but denied liability for accidental death.

There was a trial before a jury in October, 1935, and a verdict returned in favor of the plaintiff in the sum of $5,000, the question of interest having been, by stipulation, left to the determination of the court. At the conclusion of the plaintiff's evidence the defendant moved for a directed verdict, which motion was overruled. At the conclusion of all the evidence the defendant renewed its motion for a direct-ed verdict and also moved the court to dismiss the case for want of merit. The court reserved decision upon these motions until after verdict and submitted the case to the jury. After the verdict the defendant renewed its motions and also moved in the alternative for a new trial.

In March, 1936, the trial court overruled defendant's motions and entered judgment for the plaintiff in the sum of $5,000, the amount of the verdict, with interest from May 7, 1934. From this action this appeal was brought.

The pertinent clause in the policy sued upon reads as follows: "In addition to the Insurance Under the Policy to which this rider is attached, and subject to the provisions of said Policy, the Company will pay at its Home Office as an Accidental Death Benefit, Five Thousand Dollars, to the Beneficiary or Beneficiaries under said Policy, or, if no Beneficiary be living when said Policy becomes a claim by death, to the executors, administrators or assigns of the Insured, immediately upon receipt of due proof that such death occurred during the continuance of said Policy while there was no default in the payment of premium, as a result, directly and independently of all other causes, of bodily injuries, effected solely through external, violent, and accidental means, of which, except in case of drowning or of internal injuries revealed by an autopsy, there is a visible contusion or wound on the exterior of the body, and that such death occurred within sixty days of the accident, provided, however, that no Accidental Death Benefit shall be payable if such death resulted from suicide—whether sane or insane; from having been engaged in military or naval service in time of war; or in submarine operations; or in aviation or aeronautics; or from a state of war, riot or insurrection; or directly or indirectly from bodily or mental infirmity or disease in any form."

The question presented on appeal is whether there was sufficient evidence to support the verdict of the jury.

The evidence shows that the insured fell down a flight of steps on the evening of November 11, 1933, and was rendered unconscious from hitting his head. He was assisted to his home and was ill, vomiting profusely. He endeavored to return to his work but shortly went back to his home, where his condition grew steadily worse, until the early morning of November 17, 1933, when he suddenly screamed and be-

came unconscious. A physician was called and the insured was removed to a hospital, where an operation was performed on his head, but he died the next day, November 18.

About May 1, 1934, the insured's body was exhumed and an autopsy performed. The doctor who made this examination testified that two fractures of the skull of the deceased were found.

There were a number of lay witnesses who testified that previous to his fall the insured was apparently in good health. While this testimony was undoubtedly competent, we must look to the evidence of medical experts as to the cause of insured's death. Aetna Life Insurance Company v. Kelley (C.C.A.) 70 F.(2d) 589, 93 A.L.R. 471. Such a question is purely medical. The expert testimony offered on behalf of the plaintiff was to the effect that the insured's fall and consequent fracture of the skull caused meningitis, which was the immediate cause of his death. Three physicians testified that, in •their opinion, insured died as a result of the fall. These included the doctor who operated upon the insured and treated him in the hospital where he died, and the doctor who performed the autopsy.

The defense introduced a doctor who gave it as his opinion, from the evidence as he had heard it, that the insured's death was not the result of the fall, but was caused by a disease of the ear (otitis media) from which he was alleged to be suffering. Two other doctors testified for the defense as to the history of the insured's health.

The main reliance of the defense was upon a certificate of the coroner, Dr. Jas. M. Whitfield, that was filed with proofs of death by the plaintiff and a certificate of death filed under the Virginia laws by the coroner. In the proof of death certificate the coroner in answer to the question, "what was the immediate cause of death?" stated "Meningitis—following a blow on head—or from Otitis Media—he had both possible causes." In the same certificate Dr. Whitfield stated that he had never been consulted by the deceased or any relation or friend for the condition which caused insured's death. In the death certificate the coroner stated that he attended the deceased from November 17 to November 18, 1933, and in response to the clause in the death certificate blank, "If death was due to external causes (violence) fill in also the following:" gave the date of the injury as "11–11–1933."

It is contended on behalf of the defendant that the plaintiff, having filed proofs of death showing that insured was suffering from otitis media at the time of his fall, is bound by that statement unless it is shown that such statement was made by mistake or under misapprehension of the facts.

The coroner, Dr. Whitfield, was not called as a witness by either the plaintiff or the defendant, and no effort was made by the plaintiff to show the source from which the statements in the certificates were derived. The defendant's theory that the certificates of the coroner showed that insured had otitis media at the time of the fall seems to have been adopted by the trial judge, who gave the jury, in response to an inquiry from its members, the following instruction:

"The court further charges the jury that in the proofs submitted by the plaintiff to the defendant company, it was stated that at the time of his fall the insured was suffering from otitis media, a disease which the evidence shows to be an infection of the middle ear, and that such infection was one of two possible causes of the meningitis which caused his death, and, in this connection, the court further charges the jury that the plaintiff is bound by this statement and it must be taken by the jury as an established fact in this case, unless they further find that the plaintiff has shown by a preponderance of the evidence that the statement was made by mistake or under a misapprehension of the facts concerning the insured's physical condition at the time of the fall."

"I don't know to what extent, but I assume that will clarify the difficulty you have. That fact is taken as an established fact unless the plaintiff has shown one or two other matters referred to there, and in determining whether or not the plaintiff has met that requirement you are to take into consideration and weigh all the evidence before you that throws light upon that question. I again caution you gentlemen that you are to read the entire charge and be governed by the charge as a whole rather than any one particular part of it."

An examination of the testimony shows that the only evidence that the deceased had a disease or inflammation of the middle ear is the certificate of the coroner and the opinion of one of the defendant's medi-

cal experts who had never examined the insured.

■ A study of the coroner's statement does not show conclusively that the insured had the disease of the ear at the time he fell. The statement that the immediate cause of death was "meningitis—following a blow on head—or from Otitis Media—he had both possible causes," does not necessarily mean that he had the ear disease before he fell. The only certain deduction from this statement is that he had both meningitis and otitis media at the time of his death. In addition to this the other statements in the coroner's certificates show conclusively that he could not possibly have had any personal knowledge as to insured's condition before the fall for he states that he had never examined or treated the deceased before he went to the hospital, and only after that did he examine him.

It is admitted in the brief filed on behalf of the defendant that proof of claim must be considered as a whole (Mutual Ben. Life Insurance Co. v. Newton, 22 Wall.[89 U. S.] 32, 22 L.Ed. 793), and when this is done we do not think the only conclusion that can be reached is that insured was suffering from otitis media at the time of his fall.

The law governing cases of this character is discussed in Landress v. Phoenix Mutual Life Insurance Company, 291 U.S. 491, 54 S.Ct. 461, 78 L.Ed. 934, 90 A.L.R. 1382. There Mr. Justice Stone cites with approval a decision of the Circuit Court of Appeals for the Eighth Circuit (Western Commercial Travelers' Ass'n v. Smith, 85 F. 401, 404, 40 L.R.A. 653), in which latter case Sanborn, C. J. said: "If the death was caused by a disease which was not the result of any bodily infirmity or disease in existence at the time of the accident, but which was itself caused by the external, violent, and accidental means which produced the bodily injury, the association was equally liable to pay the indemnity. In such a case, the disease is an effect of the accident, the incidental means produced and used by the original moving cause to bring about its fatal effect, a mere link in the chain of causation between the accident and the death, and the death is attributable, not to the disease, but to the causa causans, to the accident alone."

■ There was ample evidence to support the conclusion, evidently reached by the jury, that the meningitis that caused the death of the insured was the result of the fall.

Where there is a conflict in the expert evidence presented at the trial, the cause is properly submitted to the jury. New Amsterdam Casualty Company v. Shields (C.C.A.) 155 F. 54. See also, Continental Casualty Co. v. Willis (C.C.A.) 28 F.(2d) 707, 61 A.L.R. 1069.

The instructions of the judge were favorable to the defendant to an extent that bordered on error, but certainly the defendant cannot complain of that fact. Under the instructions as given, the jury resolved the issue in favor of the plaintiff. Unless clearly compelled to do so, courts are loath to invade the province of juries in settling questions of fact.

The judgment is affirmed.

SOPER, Circuit Judge (dissenting).

A just appraisal of the evidence in this case must take into account the fact that the deceased was suffering from a disease of the middle ear, to wit, otitis media, at the time of his death. This fact is established by uncontradicted evidence and inferences necessarily drawn therefrom, and the finding is in accord with well decided cases upon the effect to be given to statements in a proof of death filed by the beneficiary of an insurance policy. The coroner physician who attended the insured on the last two days of his life made the uncontradicted statement in the proof of death that the immediate cause of death was "Meningitis—following a blow on head —or from otitis media—he had both possible causes"; and in the certificate of death, that the principal cause of death was meningitis—results of fall or otitis media," and as a contributory cause that "he had dizziness five or six days; then he fell down stairs; then he had headache or earache."

The existence of the disease was therefore established beyond doubt by evidence proceeding from the plaintiff himself, for it was not the defendant insurance company but the coroner who introduced this important factor into the case; and the coroner must have discovered the disease himself or have been informed of its existence by physicians who had previously attended the injured man. The case turned on this point in the District Court and it is of the utmost significance that neither the coroner, who lived at the place of trial, nor the two family physicians of the

deceased were called to show that in fact he had no such disease and that the coroner's written statements were mistaken. It is suggested in the opinion of the court that these statements do not necessarily mean that the insured had a disease of the ear before he fell. This was not the view of the District Judge who told the jury that it was stated in the proofs of death that at the time of the fall the insured was suffering from otitis media, a reasonable interpretation of the statements of the coroner that either the fall or the disease was the cause of the meningitis, especially as there was no testimony that the otitis media resulted from the fall.

But even if we assume that the statements do not show with certainty that the insured was afflicted with the disease before he fell, our difficulties are not over, for it is equally true that the statements do not show with certainty that the disease followed the accident; and in the absence of other evidence on the point, the sequence of events was merely a matter of unreliable conjecture. Moreover, if it should be surmised that the disease followed the fall, the guesswork would not be at an end, because there was no evidence tending to show that the disease was caused or likely to be caused by the fall. It was not sufficient for the plaintiff to raise doubts in the jury's mind as to the cause of death. The burden was upon him to show that the death occurred within the terms of the policy "as a result directly and independently of all other causes of bodily injuries effected solely through external, violent and accidental means" and not "directly or indirectly from bodily or mental infirmity or disease in any form." Obviously the plaintiff did not lift this burden by showing that death was caused either by accident or by disease, and then leaving the choice to the uniformed judgment of the jury.

The weight to be given to representations or statements of fact in proofs of death as to the manner of death of the insured is shown by the decisions which hold that good faith and fair dealing require that the insured be bound thereby until it is shown that they were made under a misapprehension of facts or in ignorance of material matters subsequently ascertained. The propriety of applying this rule in the pending case is particularly clear, since the plaintiff deliberately refrained from producing the medical witnesses who had actual knowledge of the condition of the insured prior to the fall, and rested his case upon the expert opinions of physicians who testified upon the hypothetical state of facts to which reference will presently be made. See Mutual Ben. Life Insurance Co. v. Newton, 22 Wall. 32, 35, 36, 22 L. Ed. 793; Hassencamp v. Mutual Benefit Life Ins. Co. (C.C.A.) 120 F. 475; Jensen v. Continental Life Ins. Co. (C.C.A.) 28 F.(2d) 545.

It is nevertheless said that it was for the jury to decide whether accident or disease caused the death of the insured, because three doctors, in answer to hypothetical questions propounded, on plaintiff's behalf, testified that in their opinion the insured's fall and consequent fracture of the skull caused the meningitis which resulted in death. They did so testify; but their testimony was insufficient to take the case to the jury, because in forming their opinion they excluded the established fact that the deceased was afflicted with otitis media. Thus Dr. Whitehead stated on cross-examination that otitis media is a frequent cause of meningitis, and that if it was established that the insured had an infection of the middle ear, this was the most probable source of the meningitis. Dr. Grinels said on cross-examination that if the insured had otitis media, or infection of the middle ear, it was much more probable that that was the cause of the meningitis than that death followed an infection aspirated into his lung and then picked up by the blood and carried to a blood clot on the brain caused by the fracture of the skull, as he had previously testified. Dr. Crutchfield said that his opinion that the fall produced meningitis was predicated upon the assumption that there was some pathological condition in the mastoid, middle ear, or sinuses which, liberated by the fall, carried the infection to the brain and caused the meningitis. He also said that otitis media frequently caused meningitis.

It is therefore clear that the plaintiff failed to produce any legally sufficient proof to show either that the record of otitis media was mistaken or that the insured died solely from the effects of the fall or that his death was produced by accident independently of bodily infirmity or disease. It seems obvious, from these considerations alone, that the judgment of the District Court should not be affirmed. When, in addition, we take into consideration the uncontradicted medical history of the insured given at the hospital that before the fall he was suffering from dizzi-

ness, and a blood test taken at the hospital which indicated that the deceased was suffering from an infection totally disconnected with the fall, and the testimony of the physician, who made the autopsy for the plaintiff in preparation for the trial, that he demonstrated a fracture of the skull but failed to examine the ear, mastoid, or sinuses, we perceive that it was not safe to allow the jury to speculate which of two possible causes brought about the insured's death.

A motion for a directed verdict was made by the defendant at the conclusion of the evidence. The court without objection reserved its decision and submitted the case to the jury subject to the ruling of the court on the motion. Four months after the verdict, the motion was overruled and judgment for plaintiff rendered. Under these circumstances, the rule announced in Baltimore & Carolina Line, Inc. v. Redman, 295 U.S. 654, 55 S.Ct. 890, 79 L.Ed. 1636, should be applied and the judgment reversed without new trial.