## MURASKY v. COMMERCIAL TRAVELERS MUT. ACC. ASS'N OF AMERICA.
### No. 169.

Circuit Court of Appeals, Second Circuit.

Feb. 7, 1938.

Mackenzie, Smith & Michell, of Syracuse, N. Y. (Willis H. Michell and Charles E. Spencer, both of Syracuse, N. Y., of counsel), for appellant.

Fuller, Brown, Hubbard & Felt, of Utica, N. Y. (Moses G. Hubbard, Jr., of Utica, N. Y., of counsel), for respondent.

Before MANTON, AUGUSTUS N. HAND, and CHASE, Circuit Judges.

MANTON, Circuit Judge.

This suit is on a policy of insurance payable to the appellant for the loss of life of her husband, Leo Murasky. The policy insured the decedent for loss of life "caused solely and exclusively by external, violent and accidental means." The insured died March 15, 1936, and it is claimed that his death was caused by an accidental fall on March 12, 1936. Appellant's complaint was dismissed at the trial and she assigns error, contending that the evidence presented a jury question from which it could find that the fall was accidental and the sole cause of insured's death. He died of a cerebral hemorrhage. He had been suffering from polyneuritis for several months before his death which made him unstable on his feet and was liable to cause a fall or collapse at any time. Insured's wife testified that he had been confined to his home for three months prior to his death, except that he occasionally took a motor ride. Two days prior to the fall, he went to his office and resumed his labors there for three hours and then was taken home, where he rested for the balance of the day. For six weeks prior thereto he had had no feeling in his legs and he went around the house with the aid of a cane; he could just shuffle around; he could not walk.

On March 12th he started down the stairs leading from the kitchen to a garage in the basement of his house. The stairs had a sharp turn into the basement. There was a railing on the stairway. After he proceeded down the stairs, his wife heard a noise, which sounded like a fall of lumber, a terrible bump; she called to him and he answered in a clear voice, "I am all right." There was a silence and she ran down the stairs and found him leaning against the partition. Her son also went down the stairs and he said insured was "lying at the foot of the stairs with his head up against the wall and his feet were lying on the landing—the lower landing." He was taken to his room and put to bed, and his wife continued to prepare dinner in the kitchen. After some time they heard the decedent go into the bathroom. He did not return and they followed and found that he had been vomiting and was lying on the floor in an unconscious condition. He was returned to bed and later sent to a hospital, where he died March 15, 1936.

Appellant stated that when she found the deceased lying on the stairway "he looked as if he had fallen backward, and was leaning against this partition." The physician who treated the deceased testified that the disease from which he suffered made him unstable and prone to fall and that this condition would have continued until the time of his death and made it hazardous for him to go up and down stairs without the aid of a cane. Another physician who examined deceased testified that he was suffering from multiple neuritis. He also stated that this disease would cause the insured to be unstable on his feet and impair his ability to walk, and that his legs might easily give out and he would be liable to fall. He said: "No man with the amount of involvement he had in December would have recovered anywhere near the full use of his legs in two months and a half * * * so that any man trying to go down a stairway like that * * * would do it with a certain amount of hazard to himself." He did not think the disease would cause deceased's legs to collapse but would tend to make him unstable and fall easily because he dragged his feet and stubbed his toes as he went along. A third physician gave like testimony. His son testified that as he walked he shuffled his feet and needed support. Other lay witnesses gave testimony as to his walking ability with but little contradiction of the above. With no eye witness as to the cause of his fall, the court below was asked to permit the jury to speculate and reach a conclusion that he did in fact fall and that his fall was solely and exclusively due to accidental means. An autopsy showed there was no evidence of trauma which would be some indication of an accidental fall. No evidence of bruises or other injuries which a fall might cause appeared on his body.

An inference or mere scintilla was not enough to warrant the court below in the submission of the issue to the jury as to

whether he had a fall due solely to an accidental cause. Gunning v. Cooley, 281 U.S. 90, 50 S.Ct. 231, 74 L.Ed. 720; National Ass'n of Ry. Postal Clerks v. Scott, 2 Cir., 155 F. 92; Phillips v. Travelers' Ins. Co., 288 Mo. 175, 231 S.W. 947. The rule has long been established that where pre-existing disease causes or contributes in causing death, there can be no recovery and under such circumstances there is no issue for the jury. Korff v. Travelers Ins. Co., 7 Cir., 83 F.2d 45; New York Life Ins. Co. v. Doerksen, 10 Cir., 75 F.2d 96; Order of United Commercial Travelers v. Nicholson, 2 Cir., 9 F.2d 7; McMartin v. Fidelity & Casualty Co., 264 N.Y. 220, 190 N.E. 414; Smith v. Massachusetts Bonding & Ins. Co., 207 App.Div. 682, 202 N.Y.S. 857, affirmed 241 N.Y. 558, 150 N.E. 554.

Judgment affirmed.