**MANDLES et al. v. GUARDIAN LIFE INS. CO. OF AMERICA (two cases).**

Nos. 2128, 2129.

Circuit Court of Appeals, Tenth Circuit.

Nov. 19, 1940.

Ira C. Rothgerber, Jr., of Denver, Colo. (Walter M. Appel and Ira C. Rothgerber, both of Denver, Colo., on the brief), for appellants.

Lowell White, of Denver, Colo., for appellee.

Before PHILLIPS, BRATTON, and MURRAH, Circuit Judges.

MURRAH, Circuit Judge.

The two cases involve the same subject matter and have been consolidated for trial and review.

The trial court sustained a motion to dismiss the complaint. The allegations of the complaint, well pleaded, are admitted thereby and constitute the facts on review. The complaint alleges that the appellant is the beneficiary under a policy of life insurance written on the life of Bessie M. Rude, by the appellee in the sum of $10,000.

The policy provided for double indemnity in the event of death while the policy was in force, if "such death resulted directly and independently of all other causes from bodily injuries effected solely through external, violent, and accidental means, * * provided, however, that the Double Indemnity shall not be payable if the insured's death resulted from suicide, whether sane or insane, * * * or directly or indirectly from bodily or mental infirmity or illness or disease in any form."

Complaint further alleges that the insured was adjudged a mental incompetent by the County Court at Denver, Colorado, after issuance of said policy and was taken to an institution at Edgewater, Colorado, in 1936, and nurses were employed to care for her. That on March 21, 1936, insured complained to the nurses that she was being annoyed by voices and wanted to complain to police. She was induced to go to her bedroom; "while she was in the bedroom she went to the window for the purpose of calling the police for help or reporting, as she claimed, the annoyance to which she was being subjected, and thrust her arm through the lower pane of the window. She cut her arm on the jagged portions of the window pane. A doctor was called, and the wounds were dressed, but as a direct result of the cuts or scratches, which she had so received, she became ill, septicemia set in, and she died of septicemia at Denver, Colorado, on March 25, 1936."

The company paid the face amount of the policy. The appellant sued under the double indemnity clause thereof.

The question presented is whether or not the allegations of the petition state a cause of action on which relief can be granted and thereby involves the interpretation of the double indemnity clause of the policy.

No cases from the Supreme Court of the State of Colorado have been cited and we have found none which control or bear upon the facts presented. It is therefore necessary to look elsewhere for decisions which control the question before us. Our quest for a correct result, from the facts before us, is however, made difficult by the innumerable decisions from many jurisdictions, both federal and state, which appear to bear upon the subject and which it is urged control the facts here. Our task would not be great if we could find application in some of the well-established rules in cases cited as controlling.

The question of what constitutes an "accidental injury resulting in death", or "death resulting from accidental means", within the more or less categorical provisions of a life insurance policy has been the subject of prolific litigation and has resulted in some sharp conflict along the way,[1] but the modern trend in both state

---

[1] See Vol. 6 Couch on Insurance, at page 5296, seq.; Vol. 5 Couch on Insurance at page 3957, seq.; Preferred Accident Ins. Co. of New York v. Combs, 8 Cir., 76 F.2d 775; Browning v. Equitable Life Assur. Society, 94 Utah 532, 72 P.2d 1060, 1070, wherein the court said: "An examination of many cases involving disability policies convinces me that it is possible to get at least one case to support any possible position. Some of the courts seem to use the formula, accident plus disability equals liability. But the formula is: Accident plus disability caused by the bodily injuries effected solely by external, violent, and accidental means and resulting directly and independently of all other causes equals liability. I am willing to 'liberalize' these phrases, but I do not think they should be liberalized to the point of reading them out of the policy."

See, also, Equitable Life Assur. Soc. of United States v. Gratiot, 45 Wyo. 1, 14 P.2d 438, at page 442, 82 A.L.R. 1397, at page 1404.

and federal cases is rapidly approaching uniformity because the particular language employed in this class of insurance contracts has been constantly changed to meet the standards of coverage, in conformity with the adjudicated cases.[2] It is elementary that because the policy of insurance is couched in the language of the draftor of the policy, the meaning and scope, is construed strictly against the draftor and in the event of an ambiguity appearing upon its face, the ambiguity will be construed in favor of the insured.[3] It is equally clear that the rule should not be used to create the ambiguity in order to permit application of the same. The test which shall govern the interpretation of the words, or language employed, is one that is employed "in the common speech of men"; they are to be given their plain, literal meaning in their ordinary sense.[4]

█ This means that the intention of the parties, as established by the written contract, when construed in the light of the objects and purposes obviously intended, is largely controlling. We must, therefore, first look to the contract and judge the extent of the coverage created thereby, in the light of adjudicated cases.

█ It is incumbent upon the appellant to allege facts sufficient to show that the loss was a peril insured against, or that the loss was within the coverage of the policy.

The premise fairly stated is: to come within the coverage of the policy, death must have resulted directly and independently of all other causes from bodily injury effected solely through external, violent and accidental means, and not caused directly or indirectly from bodily or mental infirmity or illness or disease in any form. It may also be fairly stated that the insured, at the time the events which resulted in death occurred, was suffering from a mental infirmity; that a delusion actuated or induced her to thrust her arm through the window pane, she received a bodily injury which resulted in septicemia and death.

The question, therefore, for us to determine from these facts is, did death result directly and independently from all other causes from bodily injuries effected solely through external, violent and accidental means, and not indirectly from mental infirmity; and whether in the last analysis this presents a jury question. This brings us to the consideration of the much discussed question of "proximate and remote cause"; and, in this particular case, the determination of the question of how far we shall go in the line of causation in finding "the real", the "efficient", the "immediate" and the "proximate cause of death". Since Lord Bacon said "it were infinite for the law to consider the causes of causes, and their inpulsions one of another; therefore it contenteth itself with the immediate cause", many cases have stemmed from this basic maxim.[5] This rule has been perpetuated in cases where different forces and conditions concur, or co-operate, in producing a result; one of which is accidental and the other disease, either pre-existing latent, or followed as a natural but not necessary consequence. In such cases it is often times difficult to determine which is properly to be considered the "efficient" or "proximate cause". This has involved the necessity to decide whether the accident was the direct cause and disease the remote cause, or whether the disease is the direct cause and the accident the remote cause. In each of the adjudicated cases, which we have examined, wherein a jury question was found to exist, the accident acted upon the preexisting disease or illness, or the two concurred or co-operated in producing the result. In deciding this question the accident or condition next in time or in space to the result is not necessarily deemed to be the proximate cause. This class of cases may be divided into several categories. See Browning v. Equitable Assurance Society, supra.[6]

[2] Vol. 5 Couch on Insurance at page 3957.

[3] Artie M. Suggs v. Mutual Benefit Health & Accident Association, 10 Cir., 115 F.2d 80.

[4] Chase v. Business Men's Assur. Co. of America, 10 Cir., 51 F.2d 34; Lewis v. Ocean Accident & Guarantee Corp. Limited of London, England, 224 N.Y. 18, 120 N.E. 56, 57, 7 A.L.R. 1129.

[5] Lawrence v. Accident Insurance Co.,

[7] L.R.Q.B.D. 216; Ætna Life Ins. Co., Hartford, Conn. v. Conway, 10 Cir., 102 F.2d 743; Equitable Life Assurance Society v. Gratiot, supra; Commercial Casualty Ins. Co. v. Stinson, 6 Cir., 111 F. 2d 63.

[6] Preferred Accident Ins. Co. of New York v. Combs, supra; New York Life Insurance Co. v. Doerksen, 10 Cir., 64 F.2d 240; Jensma v. Sun Life Assurance Co. of Canada, 9 Cir., 64 F.2d 457; ·

From noted cases it appears that modern authority has departed from the rule announced in National Masonic Association v. Shryock, 8 Cir., 73 F. 774, and cases decided on the rule established therein,[7] wherein Judge Sanborn announced the rule that if the insured were afflicted with a disease or bodily infirmity which caused the death the company was not liable, if at the time of the accident the insured was suffering from a pre-existing disease or bodily infirmity and if the accident would not have caused the death if he had not been afflicted with the disease or infirmity, but death resulted because the accident aggravated the effects of the disease, or the disease aggravated the effects of the accident; in which case, death would not be the result of the accident alone but would be caused partly by disease and partly by the accident. In such circumstances it was held that no jury question existed. See Preferred Accident Insurance Co. of New York v. Combs, supra.

The appellant contends that this case falls within the category of cases exemplified by Commercial Casualty Ins. Co. v. Stinson, supra, wherein cause of death is a jury question when the accident and disease concur or co-operate in producing the result, or when the accident acted upon, or accelerated a pre-existing condition and without which accident, death would not have occurred.[8]

The rule is well stated in Kelly v. Prudential Insurance Company of America, supra [334 Pa. 143, 6 A.2d 59], wherein it is stated: "It is clear that if the physical condition of the insured is merely weakened or his resistance to disease lowered by a pre-existing ailment or disease incident to advancing age, which creates a bodily condition of a passive nature not alone sufficient to cause death, this fact will not prevent recovery for death resulting from accidental means under an insurance policy providing indemnity therefor, even though death resulting indirectly from bodily or mental infirmity or disease is excluded as a risk, provided the accident sets in progress the chain of events leading directly to death".[9]

Superficially the Bohaker v. Travelers' Ins. Company and Kelly v. Prudential Ins. Company, supra, cases support the contention of the appellant and with the reasoning of these cases we are in complete accord. The distinction lies in the salient fact that in the Bohaker case the insured was suffering from typhoid fever, confined to his bed, and left alone. By some unknown means he fell from an open window and was found on the ground outside the window. The question presented was whether or not the fall from the window was caused by the bodily infirmity or whether the insured went to the window for the purpose of raising the same and fell out. There, the court said in considering whether or not the death was caused by bodily injuries effected directly and independently of all other cause through external, violent and accidental means, "a sick man may be the subject of an accident, which but for his sickness would not have befallen him." [215 Mass. 32, 102 N.E. 344, 46 L.R.A., N.S., 543.] The court further said, "many instances are found where two equally dominant causes co-operate or concur in producing a result. The very numerous cases arising out of joint or simultaneous torts are illustrations. Two or more causes, each proximate in character and only one of which is accidental, may co-

Bohaker v. Travelers' Insurance Co., 215 Mass. 32, 102 N.E. 342, 46 L.R.A.,N.S., 543; Pacific Mutual Life Ins. Co. v. Smith, 166 Ark. 403, 266 S.W. 279; Commercial Casualty Ins. Co. v. Stinson, 6 Cir., 111 F.2d 63; Kelly v. Prudential Insurance Company of America, 334 Pa. 143, 6 A.2d 55; Ætna Life Ins. Co. v. Bethel, 140 Ky. 609, 131 S.W. 523; Standard Accident Ins. Co. v. Rossi, 8 Cir., 35 F.2d 667; London Guaranty & Accident Co. v. Leefson, 3 Cir., 37 F.2d 488; Employers Liability Assur. Corp. v. Dean, 5 Cir., 44 F.2d 524, certiorari denied in 283 U.S. 825, 51 S.Ct. 347, 75 L.Ed. 1439; Continental Casualty Co. v. Pouquette, 9 Cir., 28 F.2d 958; See also Vol. 5 Couch on Insurance at page 4004, seq.

[7] Commercial Travelers' Mutual Accident Association of America v. Fulton, 2 Cir., 79 F. 423; Kerns v. Ætna Life Ins. Co., 8 Cir., 291 F. 289; Maryland Cas. Co. v. Morrow, 3 Cir., 213 F. 599, 52 L.R.A.,N.S., 1213; Ryan v. Continental Casualty Co., 5 Cir., 47 F.2d 472; Murasky v. Commercial Travelers Mut. Acc. Ass'n of America, 2 Cir., 94 F.2d 578.

[8] Bohakar v. Travelers Insurance Company of Hartford, Conn., supra; Pacific Mutual Life Ins. Co. v. Smith, supra.

[9] Preferred Accident Ins. Co. of New York v. Combs, supra; Browning v. Equitable Life Assur. Soc., supra; Kelly v. Prudential Ins. Co. of America, supra.

operate in producing an injury. In such cases the limiting language of the policy would apply. The present policy does not stipulate that there shall be no recovery, if any other circumstance than the accident, directly or indirectly, wholly or in part, proximately or remotely, contribute to the injury, as do some insurance contracts * * *. The policy in the case at bar does not go so far as to require the court to search beyond the active, efficient, procuring cause to a cause of a cause. * * * the single operating, proximate cause, therefore, might have been found to be the fall and not the fever."

It is clear, therefore, that a fact situation existed as to the question of whether or not the proximate cause was illness or accident. Likewise, in the Kelly case, supra, it was a question of fact for the jury to determine from the evidence whether or not an attack of vertigo caused the insured to fall or whether the insured slipped on a step, which would have been accidental. In Aetna Life Insurance Company of Hartford, Conn. v. Conway, supra, this court followed the Kansas rule.[10] The case involved an accident policy, with a provision very similar to the one in the instant case and wherein the insured while a patient in the hospital fell from the bed, after which death occurred. The question was, did encephalitis, from which the insured was suffering, cause him to fall from the bed, or was the fall accidental and hence the proximate cause of death, independent of illness. The court said "the evidence not conclusively establishing that encephalitis caused the fall, the question was one for the jury." [102 F.2d 744.] There was evidence that the fall could have been caused from illness, or that the fall was accidental; the court properly submitted this question to the jury. The scope of our inquiry is thus made clear in the determination of the proximate cause of death. The cause of the fall was made the subject of inquiry and liability was measured thereby. The same fact questions are presented in numerous cases wherein the question of whether or not death resulted from accident or from illness, or disease, was held to be a jury question.

If under the terms of the policy which measure the limits of the coverage, we could rest this case on the premise that the act of thrusting the hand through the window pane was an accident which procured, or induced, septicemia, resulting in death, our solution to the problem would be easy. If we could say in the light of the numerous adjudicated cases that. the act of thrusting the hand through the window pane, causing injuries, acted upon a pre-existing latent, secondary, or dormant condition which was thereby accelerated and from which septicemia and death resulted, it would not be difficult to say that death was within the coverage of the policy. It would follow that the act of thrusting the hand through the window was the cause and because she was insane it was accidental,[11] or that death resulted as a natural, but not necessary consequence, because "septicemia set in" it would be an accidental death within the coverage of the policy.[12]

The question, therefore, is presented whether or not under the plain terms of the policy we are required to look beyond the act of thrusting the hand through the window pane in our search for the direct or indirect cause. We may conclude that the act of thrusting the hand through the window pane was accidental, whether intentional or unintentional; and, that because septicemia set in as a natural but not necessary result, death was accidental.

The peril insured against was death by accidental injury and to come within the coverage of the policy it must not have resulted directly or indirectly from bodily or mental infirmity and if the peril excepted from the policy conduces, or contributes to the peril insured against, to produce the loss, then we think we must look to the "causes of causes," and to that extent the broad and general rule is modified to give effect to the plain and unambiguous terms of the insuring clause of the policy.

10 Bukata v. Metropolitan Life Ins. Co., 145 Kan. 858, 67 P.2d 607; Spence v. Equitable Life Assur. Society, 146 Kan. 216, 69 P.2d 713; Continental Casualty Co. v. Colvin, 77 Kan. 561, 95 P. 565.

11 Accident Insurance Co. v. Crandal, 120 U.S. 527, 7 S.Ct. 685, 30 L.Ed. 740; Connecticut Mutual Life Insurance Co. v. Akens, 150 U.S. 468, 14 S.Ct. 155, 37 L.Ed. 1148.

12 Vol. 5 of Couch on Insurance at page 3995. Annotations 56 A.L.R. 870; 61 A.L.R. 1072; Maryland Cas. Company v. Massey, 6 Cir., 38 F.2d 724, 71 A.L.R. 1428; Chase v. Business Men Association, supra.

The appellant contends that mental infirmity had nothing whatsoever to do with the entry of septicemia germs into the body of the insured. If we could rest our syllogism upon the entry of the septicemia germs, which in turn caused death, this would be true; but, in order for septicemia to constitute an accidental injury it must, naturally, but not necessarily, follow an accidental injury.[13]

It then becomes necessary to consider whether or not the mental infirmity merely concurred, co-operated, or participated with an accident, which caused bodily injuries resulting in death, or whether mental infirmity independently and without interaction with any other agency directly, or indirectly, caused the insured to thrust her hand through the window pane.[14] If the facts, as alleged in the petition, show or tend to show that mental infirmity concurred, co-operated with, or contributed to any other agency in conducing the insured to thrust her hand through the window pane, the authorities urged as controlling would be applicable and our conclusion would be different. No other cause or reason is suggested by the allegations of the plaintiff's petition for the act of thrusting the hand through the window except mental illness and we do not understand under the theory on which this case is argued, that appellant contends the jury should have been permitted to speculate or surmize that the mental illness concurred, co-operated, or contributed to any other existing condition or agency in procuring the accident, or that any other agency co-operated or concurred with the mental illness, causing the act.[15]

We conclude that the insured's death resulted directly or indirectly from mental infirmity and that the double indemnity clause of the policy having excluded death due from such cause, there can be no recovery under it.

The judgment is affirmed.

[13] Lincoln National Life Ins. Co. v. Erickson, 8 Cir., 42 F.2d 997; Continental Casualty v. Willis, 4 Cir., 28 F.2d 707, 61 A.L.R. 1069; Chase v. Business Men's Association, supra; and Rebenstorf v. Metropolitan Life Ins. Co., 299 Ill.App. 71, 19 N.E.2d 420.

[14] Lee v. New York Life Insurance Co., 95 Utah 445, 82 P.2d 178, 180, wherein the court said: "It seems difficult to conceive of any case where there may be any interaction of the results of an injury and the results of some other independent cause regardless of how paramount, efficient or concurring the other independent cause may be in producing the death or incapacity which, under that holding, would not be covered by the policy. The only case which would apparently not be covered by the policy would be where the course of the chain leading from the injury and the course of the chain leading from the other cause, be it a disease, toxemia, infection or what not, were shown to be entirely separated without any interaction one with the other."

[15] New York Life Ins. Co. v. Doerksen, 10 Cir., 75 F.2d 96; Lee v. New York Life Ins. Co., supra.